The People vs. Odell.

THE PEOPLE v. ODELL.

*1. INDICTMENT:* SURPLUSAGE. A count in an indictment charging an assault with intent to kill and to murder, although the statute does not use the words " with intent to murder." *Held:*—good, the words *and to murder* being mere surplusage and therefore immaterial.

*2. ———:* SEVERAL COUNTS: SUFFICIENCY. Where an indictment contains several counts, if one is good, and sufficient to sustain the judgment, it will not be reversed or set aside on the ground that there is a count that is bad.

*3. ASSAULT WITH INTENT TO KILL:* DIVISIBLE. The crime of assault or assault and battery with intent to kill is divisible into degrees, and the defendant may be convicted of the offense charged or of any lesser offense necessarily embraced therein.

*4. ———: ———:* PROOF. It is enough to prove so much of the indictment as shows that the defendant has committed a substantial crime therein specified, or one that is necessarily included in, and forms a constituent element of the higher offense charged.

*5. INTOXICATION:* EVIDENCE OF: WHEN ADMISSIBLE. Where an offense is divisible into degrees, evidence of intoxication is admissible for the purpose of enabling the jury to determine the purpose-motive or intent with which the act was committed.

*6. ———:* DEGREE: WHEN A DEFENSE. Intoxication may not under any circumstances be regarded as a defense, excuse or justification for the commission of crime, unless in case of a person who performs an act under such a state of intoxication as to be unaccompanied by volition, when he has lost control of his will, and is incapable of forming a purpose.

*7. SABBATH:* INSTRUCTIONS TO JURY. A jury that has retired to deliberate upon their verdict, may request and receive additional instructions on the Sabbath, or the Judge may on that day upon his own motion have the jury brought in and re-instruct them, for the purpose of correcting a supposed error or mistake in his former charge.

*8. DEADLY WEAPON:* USE OF: PRESUMPTION. There being, under the provisions of the Penal Code, felonious assaults by the use of deadly weapons, other than assault with intent to kill. *Held:*—erroneous to instruct the jury that " where an assault or assault and battery is made with a deadly weapon, there is a presumption of an intent to take life, and can only be rebutted by proof that it was excusable or justifiable.

The People vs. Odell.

*Writ of Error to Yankton County District Court.*

THE defendant was indicted and tried in the court below, BENNETT, J., presiding, for the crime of an assault and battery with intent to kill. During the progress of the trial, and while one G. O. Erickson was being examined as a witness on behalf of defendant, the counsel for defendant asked the following question: "What was defendant's condition as to being intoxicated or under the influence of liquor at the time this occurred?" meaning the shooting alleged against defendant.

To this question the district attorney objected as irrelevant and incompetent, which objection the court sustained, and defendant excepted. The trial was concluded and the cause submitted to the jury at 9 o'clock on Saturday evening. On the next day, Sabbath afternoon, the jury not having agreed, the Judge on his own motion, had the jury brought in and re-instructed them, for the alleged purpose of correcting a supposed error or mistake in his former charge, to all of which defendant excepted. The jury retired and shortly returned into court a verdict of guilty as charged in the indictment. Motions in arrest of judgment and for a new trial were presented and overruled, and defendant sentenced to three years' imprisonment at hard labor in the penitentiary.

*G. C. Moody, S. L. Spink, Bartlett Tripp* and *S. H. Gruber,* for plaintiff in error.

*J. R. Gamble,* District Attorney, for the People.

BENNETT, J. I. We are all of opinion that the motion in arrest of judgment was properly overruled. The indictment is sufficient. There are three counts; two charge substantially an assault, or assault and battery with intent to kill, and the third with intent to kill and murder. Admitting that there is no such crime known to our statute, as an assault with intent to murder, the count containing the charge of an intent to kill, the addition of " and to murder," would be mere sur-

plusage, and therefore immaterial. But there remains two counts against which this cannot be urged, and if there is one count sufficient to sustain the judgment, it will not be reversed on the ground that there is one that is bad. (*Bruguier v. The United States, ante 5.*) The objection that the indictment was found by a grand jury of the county of Yankton and not of the subdivision of the territory which includes the county of Yankton, is not well taken. The statute creating subdivisions provides that all causes shall be entitled and process run in the name of the county in which the court is held, and we know of no statute that provides for a grand jury to be known as the grand jury of a subdivision.

We need only say on the question as to the verdict, that it is in proper form. The charge in the indictment is single, plain and explicit, and when the jury say we find the defendant guilty as charged in the indictment, it is as certain and unequivocal as if they had named the crime of which they convicted him.

II. The first assignment of error, and which has been strenuously urged by counsel for defendant, is the exclusion of the evidence of the intoxication of defendant. It would seem that the court below held to the opinion, that the crime with which defendant was charged, was not by statute divided, and from its nature was not divisible into degrees, and that if the jury found that the assault or assault and battery was made with a deadly weapon, defendant could not be convicted of a simple assault and battery, there being no such a crime known to the law as a simple assault or assault and battery with a deadly weapon. This question becomes material, when we come to consider it in connection with § 17, Penal Code, which reads as follows:

" No act when committed by a person in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But when the actual existence of any particular purpose, motive or intent, is a necessary element, to constitute any particular *species or degree* of crime, the jury may take into consideration the fact that the accused was in-

toxicated at the time, in determining the purpose, motive, or intent with which he committed the act."

In cases of homicide, evidence of intoxication is admitted, to be considered by the jury in connection with all the testimony, in determining the degree of the crime. And the statute above quoted is but the embodiment of the general doctrine. Judge Denio, in delivering the opinion of the court in the case of *The People v. Rogers*, 18 N. Y., 9, uses the following language: " It must generally happen, in homicides committed by drunken men, that the condition of the prisoner would explain or give character to some of his language, or some part of his conduct, and, therefore, I am of opinion that it would never be correct to exclude the proof altogether." If admissible in cases of homicide, there can be no good reason, why it should not be in all crimes which the statute divides into degrees, or which are clearly so divided by inferential construction, and such is unquestionably the intent of the statute.

Is the crime with which defendant is charged susceptible of division into degrees? That is, does it necessarily embrace other crimes? We are of opinion that it does. (*The State of Iowa v. Shepard*, 10 Iowa, 126.)

That the man who commits the crime of an assault and battery with intent to kill, *ex necessitati*, has also committed the lesser offenses of an assault, assault and battery and an assault with intent to do bodily harm, and when charged with the higher might be convicted of either of the lower. Section 402 of the Code of Criminal Procedure, provides that " the jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged in the indictment, or of any attempt to commit the offense." In the case of *The People v. English*, 30 Cal., 214, the defendant was charged with " an assault with a pistol, with intent to kill and murder," and the jury found him " guilty of an assault with a deadly weapon with intent to inflict a bodily injury," and the Court say: " The offense for which the defendant was indicted was of a higher grade than that for which he was convicted, still as the offense of which

he was found guilty is included in the crime with which he was charged, the verdict is to be followed by the same consequences that would have attended it had the indictment charged the lesser offense in terms." In the case of *Beckwith v. The People*, 26 Ills., 500, the indictment was for an assault with an axe and a butcher knife with intent to commit murder," and the verdict was, "guilty of an assault with a deadly weapon, with intent to inflict a bodily injury." The Court say, "the rule of law is, that where an indictment charges many acts, with certain aggravations constituting a high crime, the jury may convict the prisoner of a lesser crime, consisting of only a portion of those acts, or with aggravation. The question here presented then, is, does the charge of an assault with a deadly weapon, as an axe or a butcher knife, with intent to commit murder, embrace an assault with a deadly weapon, with intent to commit a bodily injury? or still more to simplify the proposition, does a murder embrace within it a bodily injury? When a case of murder is pointed out, without a bodily injury, we may begin to doubt, till then we cannot." After a very full and able examination of the question, the same doctrine is held by the Supreme Court of Pennsylvania in the case of *Hunter v. The Commonwealth*, decided November, 1875, Pittsburg Legal Journal, Vol., 6 (N. S.) 53. And this, too, notwithstanding a statute, that makes a party charged with the commission of a misdemeanor, a competent witness in his own behalf, a privilege not accorded to one charged with a felony. A fact bordering very closely on the reason for the old English rule, that would not permit a conviction for a misdemeanor, under an indictment for a felony.

When a count in an indictment contains a divisible averment, it is the province of the jury to discriminate and find the divisible offense; and this distinction runs through the whole criminal law. It is enough to prove so much of the indictment as shows that the defendant has committed a substantial crime therein specified, or one that is necessarily included in, and forms a constituent element of, the higher offense charged.

It therefore seems to be the settled law, that a defendant tried on indictment for assault and battery with intent to kill, may be convicted either of the crime charged, or of an assault or assault and battery with intent to do bodily harm, or for assault and battery, or for a simple assault. That being the case it must necessarily follow, that there was error in excluding the evidence of intoxication. It is possible, as urged by the district attorney, that it was error by which defendant was not, and could not have been prejudiced. It is not every degree of intoxication that can properly be considered by the jury, and there are, doubtless, cases in which it would be proper for the court to direct the jury that it ought to have no influence upon the case. Great care should be exercised in the introduction of this class of evidence, and its consideration by the jury, so that it may not under any circumstances be regarded as a defense, or excuse or justification for the commission of crime, unless, in case of a person who performs an act, under such a state of intoxication, as to be unaccompanied by volition, when he has lost control of his will, and is incapable of forming a purpose.

In the case of *The People v. Rogers*, supra, the court below charged the jury, " that intoxication never excused crime, unless it was of such a degree as to deprive the offender of his reasoning faculties." And Judge Denio, in commenting on this instruction, says: " In the proposition as it was thus given to the jury there was no error. No rule is more familiar than that intoxication is never an excuse for crime. There is no Judge who has been engaged in the administration of criminal law, who has not had occasion to assert it. Even where *intent* is a necessary ingredient in the crime charged, so long as the offender is capable of conceiving a design, he will be presumed, in the absence of proof to the contrary, to have intended the natural consequences of his own act. Thus if a man without provocation shoot another, or cleave him down with an axe, no degree of intoxication, short of that which shows that he was at the time, utterly incapable of acting from *motive*, will shield him from conviction." And that learned Judge further holds that if the per-

petrator would escape the consequences of an act thus committed, it is incumbent on him to show either—that he was incapable of entertaining such a purpose, or that the act was committed under provocation. And if the latter, the question of intoxication might properly be left to the consideration of the jury. Not to enable them to find in it an excuse for the crime, but to aid them in determining the purpose, motive or intent with which the act was committed.

This most able opinion of Judge Denio is largely quoted from, and the doctrine which it holds, followed and strongly sustained in the case of *Kenny v. The People*, 31 N. Y., 330. Judging from the evidence before us, the defendant was not in such a state of intoxication as deprived him of his reason, or rendered him incapable of forming a purpose or design, but that the act was not done upon a sudden quarrel, or in the heat of passion, or that there might not have been some provocation is by no means clear, and therefore we cannot say that he might not have been prejudiced ·by the exclusion of the evidence of intoxication.

III. It appears from the record that the jury was charged and retired to consider their verdict about nine o'clock on Saturday night, and that at three o'clock on Sabbath afternoon, the jury not having agreed, the Judge, on his own motion, had them brought in and delivered to them further instructions by way of correcting a supposed error in his former charge, and this is assigned as error. It is claimed that this, being a judicial act, cannot be done on the Sabbath. The Sabbath being *dies non juridicus*, it is doubtless the well settled general rule that no judicial acts can be done on that day. But the jury being out, they are not permitted to separate until they have agreed upon their verdict, or are discharged by the court from further consideration of the case. The code of criminal procedure provides (§ 388) that " while the jury are absent the court may adjourn from time to time as to other business, but it is nevertheless deemed open for *every purpose* · *connected with the cause submitted to them, until a verdict is rendered or the jury discharged.*" There is no question as to the right of a jury to bring in a verdict, and the court to receive it

on that day. The very reason for receiving the verdict is that they may not be compelled to remain in the jury room during the entire day. If they were unable to agree from a failure to understand alike the instructions on a certain point, would they not have the right to come in and ask to be instructed on that point, or must they wait until Monday morning? It is not seriously contended that they would not. If this is conceded *a fortiori*, would the judge have the right, and would it not be his duty to recall the jury on that day, and correct an error in his charge, and thereby prevent an erroneous verdict, that would necessitate a new trial, or let the guilty go acquit? What can the statute mean when it says "the court shall be deemed open for every purpose connected with the trial," if it does not include this? Is it not a purpose connected with the trial to reinstruct the jury, either on their request, or on the judge's own motion, for the purpose of correcting a mistake? We certainly regard it as a question on which there should be no reasonable doubt.

IV. The only remaining question which we deem it necessary to notice is in relation to the following instruction given by the court:

" Where an assault or assault and battery is made with a deadly weapon, there is a presumption of an intent to take life, and can only be rebutted by proof that it was excusable or justifiable."

This instruction, in so far as it lays down the doctrine of the presumption of intent arising from the use of a deadly weapon, is correct. Men are presumed to intend the natural and legitimate results of their own acts, and if an assault is made with a deadly weapon, which in all human probability will produce death, it is a presumption in fact that the intention is to take life. But there are other felonious assaults by the use of deadly weapons, besides an assault with intent to kill. Section 290, penal code, provides that "every person who shoots or attempts to shoot at another with any kind of fire arms, air gun, or other means whatever, or commits any assault or battery upon another by means of any deadly weapon, or by such other means or force as was likely to

produce death, with intent to commit any felony other than an assault with intent to kill, * * is punishable " etc. Also section 308: "Every person who, with intent to do bodily harm, and without justifiable or excusable cause, commits an assault upon the person of another, with any sharp or dangerous weapon, or who, without such cause, shoots, or attempts to shoot at another, with any kind of fire arms, air gun, " etc. It would seem clear from these provisions alone that a person may assault another with a deadly weapon, without being excusable or justifiable, and yet without the intent to take life. Under this instruction, if the jury found that defendant made the assault and battery with a deadly weapon and was neither excusable nor justifiable, although they might be satisfied it was with intent to do bodily harm, or to commit some other felony, yet it would seem rather difficult for them to find a way of escape from convicting of the crime charged. It is true the court had instructed the jury that they must be satisfied beyond a reasonable doubt that the assault, or assault and battery was made with the intent to kill, but the court then made their "satisfaction" to depend on another fact, viz.: was it justifiable or excusable. Of the assault and battery with a deadly weapon—a shot-gun—there was no controversy or conflict in the evidence. This was narrowing the issue down to a very small point, and leaving the jury but little to say or do in connection with the question of the guilt or innocence of the accused. Under the view of the law of this case which we have taken, this instruction is clearly erroneous.

V. We find no error in the ruling of the court admitting the evidence of Ella Engle, as to what they in the house heard defendant say when he rode up to the window. None of the witnesses examined on the part of the people as to the threats made by defendant at the window were in the house at the time they heard them. A witness on part of defense, A. J. Springer, had testified that she and the witness, Ella Engle, were in the house, and that no such threats were made, and undertook to repeat the language of defendant when at the window. We think it was entirely proper for the prosecution to prove what was heard by others in the same room, occupy-

ing the same relative position to defendant, with the same opportunities, and no greater, to hear what defendant said at that time.　They were differently situated from any of the witnesses who had testified on the part of the people, and the prosecution had introduced no evidence as to anything that had been said, done or heard in the house. It was important in connection with the immediately subsequent conduct of these women; their fright and alarm; their sudden flight up stairs; their attempt to conceal themselves, etc.; all taken together, strongly tending to the impeachment of the witness, A. J. Springer.

VI. It is only necessary to say that all the instructions asked by counsel for defendant were properly refused, as the court in each one was asked to charge substantially that if the jury found the assault and battery was made with a deadly weapon, but not with intent to kill, they could not convict of a lighter offense than assault and battery.　As we have construed the law, they might have found him guilty of an assault or assault and battery with intent to do bodily harm, a higher degree of the offense charged than assault and battery.

For the errors herein pointed out, the judgment of the court below must be reversed, and the cause remanded for a new trial.

REVERSED.