## STATE v. KAPELINO.

It is not necessary, in a criminal prosecution, for the state to produce all its eyewitnesses to the transaction.

Where, in a prosecution for assault with a dangerous weapon, it appeared that prior to the assault there was a heated discussion at a certain house between the persons present, including defendant, who engaged in a controversy with some of them, but the person assaulted was not in the party, evidence as to the various conversations taking place at such house did not constitute part of the res gestae.

The admission or rejection of evidence as part of the res gestae lies largely in the discretion of the trial court, and its ruling will not be disturbed, where it exercises that discretion, and the appellate court cannot clearly see that it has acted erroneously in so doing.

In a prosecution for assault with a dangerous weapon, the court properly instructed the jury on the law of intoxication in the language of the statute, and that it was for the jury to determine whether defendant's mind was in such condition that he knew right from wrong or the probable consequences or result of his act.

Where, in a prosecution for assault with a dangerous weapon, the court correctly charged on the law of intoxication as a defense in the language of the statute, it was not required to repeat the instruction by giving it in the form requested by defendant.

Where, in a prosecution for assault, the jury were authorized by the evidence to find defendant guilty of an assault with a deadly weapon, with intent to murder, as charged in the information, or of assault with intent to do bodily harm with a sharp or dangerous weapon, as found by their verdict, the court correctly charged that, if defendant was not guilty of either of those offenses, the jury must acquit him, and properly refused to instruct that they might convict him of assault and battery simply.

Where, under a statute, there are degrees of crime, and the jury are charged with the duty of finding the degree, it is proper for the court to instruct in respect to the acts necessary to constitute the crime in each degree; but, where the offense charged is not divided into degrees, the court is not required to charge as to an offense that might be included in the charge made, but which the evidence would not warrant.

(Opinion filed, July 11, 1906.)

Appeal from Circuit Court, Lawrence County. Hon. W. G. RICE, Judge.

John Kapelino was convicted of assault, and appeals. Affirmed.

*Joseph B. Moore,* for appellant. *Philo Hall, Atty. Gen., Wm. H. Parker, State's Atty.,* and *Robert P. Stewart,* for the State.

CORSON, J. Upon an information duly fined, charging the plaintiff in error with an assault with intent to commit murder, by the use of a deadly weapon, he was convicted of the crime of an assault with a sharp and dangerous weapon with intent to do bodily harm. It is disclosed by the evidence that the plaintiff in error, who will hereafter be denominated the defendant, inflicted two wounds upon the person named in the information by means of a knife, about 8 inches in length and $1\frac{1}{2}$ inches in breadth, one of which on the body near the sixth rib and the other just below the left groin. It is also disclosed by the record that the defendant and injured party with a number of other young men had spent the evening, until about 11 o'clock, at the house of one Zurich; that the party broke up and on their way home engaged in snowballing, in which the defendant seems to have taken part; that the defendant, who lived near by, left the party and was gone two or three minutes, when he returned armed with a large knife, and almost immediately thereafter he stabbed the injured party with said knife, giving him the wounds above described. It is also disclosed by the record that the defendant, while at the house of Zurich with the others, drank quite freely and was somewhat intoxicated. It was the theory of the prosecution that, at the time he left the party, he went to his house and procured the knife used in stabbing Bocich, and the evidence of the witnesses seems to have warranted the correctness of this theory, as the knife was not of such a character as is usually carried by persons on ordinary occasions. The principal

errors assigned by the defendant for a reversal of the judgment are: (1) That the court erred in refusing to require the state's attorney to call as witnesses, on the part of the state, all of the persons who were present at the time the injuries were inflicted and who were present in court, that they might be cross-examined by the defendant; (2) that the court erred in refusing to permit the defendant to prove what occurred at the house of Zurich, while the parties were there present, as a part of the res gestae; (3) that the court erred in refusing to give an instruction requested by the defendant as to the effect of intoxication as a defense to the charge; and (4) that the court erred in refusing to instruct the jury that the defendant, under the charge in the information, might be convicted of simple assault and battery.

1. On the trial of the case the state's attorney called a number of witnesses, who testified fully as to what occurred at the time, immediately preceding, and immediately susequent to, the infliction of the injuries by the defendant upon the person of Bocich, and rested. The defendant then moved that the court require the state's attorney to call other witnesses who were present in court, to enable the defendant to cross-examine them. This request was denied by the court, and this refusal is assigned as error. It is contended by the defendant that it was the duty of the state's attorney to call these persons as witnesses, but in our opinion the court was right in refusing this request. It appears from the evidence that there was a large number of persons constituting the party at Zurich's house, who came away together, all of whom participated in the snowballing which seemed to be as to all parties of a friendly nature, except the defendant, who appears to have become angry for some reason, and to have left the party for a few minutes, and on returning used the knife as above stated. The law of this state does not require the production of all the eyewitnesses to the transaction on the part of the state, and, in the absence of such a requirement, we are not inclined to adopt such a rule of practice. The rule contended for by the defendant was established in England at an early date, when defendants in criminal cases were not allowed the aid of counsel in making their defense, and is not ap-

plicable in this state, where defendants are not only permitted to have aid of counsel, but, when unable to employ counsel, the same is furnished by the county, and are also entitled to compulsory process of the court to compel the attendance of their witnesses. The rule contended for by the defendant does not seem to have been generally adopted in this country, unless there were special circumstances requiring the enforcement of such a rule, except in the state of Michigan. The rule as established by the learned court of that state does not meet with our approval. We are inclined to adopt the rule, which seems to us the more reasonable one, of leaving the .state to make out its case by such witnesses as it may choose to examine, and leaving the defendant to rebut the same by such witnesses as he may choose to call. This seems to be the view of the Supreme Court of North Dakota in the analogous case of State v. McGahey, 3 N. D. 293, 55 N. W. 753, in which that learned court reviewed the authorities and concluded, as stated in the headnote, as follows: "No duty rests upon the prosecution in a criminal case to produce and swear as witnesses for the state all the eyewitnesses to the transaction, where the testimony of the witnesses called, or some of them, is direct and positive, and apparently covers the entire transaction." Such was the case at bar. Several witnesses called by the state were present and eyewitnesses of the transaction and detailed very fully all that occurred immediately prior to, at the time, and immediately subsequent to, the infliction of the injury complained of. The court committed no error, therefore, in refusing to require the state's attorney to call other witnesses then present in court.

2. The defendant sought, on cross-examination of the witnesses on the part of the state, to show that there was a heated discussion between the parties present at Zurich's, during the time they were there, in regard to the Greek and Catholic religions, and that some angry words passed between some of the parties and Kapelino; but, so far as the questions in the case indicate, there were no words between the injured party and Kapelino. The nature of the questions may be understood from the following questions propounded to witnesses for the state: "You were discussing the question of the Greek Catholic and the Roman Catholic religion, weren't

you?" "Didn't you people get into a quarrel there over the Greek Catholic Slavonians and the Roman Catholic Slavonians; and didn't Chris Miljas pound his glass down on the table * * * and say to John Kapelino, 'If you have got anything against Big Mike you got it against me, let's settle right here,' or words to that effect?" "And at that time didn't Jack Zurich tell you you must not fight? Isn't it a fact that, at the time Jack Zurich tried to quiet you boys down and told you you must not have a fight, and you commenced to get mad?" Neither Big Mike nor the party speaking to Kapelino was the party subsequently assaulted and cut. It will be further noticed that the assault committed on the injured party by the defendant occurred some time subsequently to the breaking up of the party at Zurich's, and that the defendant had left the party on the way home and returned again before the difficulty occured between him and the injured party. We think the court was therefore clearly right in excluding the testimony as to the various conversations occurring at the house of Zurich, as nothing occurred there, so far as appears from the questions propounded to the witnesses would indicate, having any material bearing on the subsequent conduct of the defendant, or which would constitute part of the res gestæ, or an excuse or justification of the defendant for the assault.

The defendant also sought to show by witnesses on the part of the defense these conversations occurring at the house of Zurich prior to the cutting. This evidence was objected to and excluded by the court, and we think properly excluded, for the reasons before stated. The discussion that occurred at the house of Zurich was clearly incompetent, irrelevant, and immaterial, and did not tend to constitute any part of the res gestæ. No definite rule can be laid down as to the admission or rejection of evidence as a part of the res gestæ, and each case must practically be decided upon the facts and circumstances connected therewith, and hence much discretion must necessarily be vested in the trial court in the admission or rejection of such evidence. People v. Wong Ark, 96 Cal. 125, 30 Pac. 1115. Where the trial court has exercised that discretion, and the appellate court cannot clearly see that it has been erroneously exercised, the ruling of the trial court will not be

disturbed. It is difficult in the case at bar to discover any theory upon which the defendant would be entitled to the evidence sought to be elicited as to the discussions taking place between the various parties at the house of Zurich. It was not shown that there was any violence used or attempted by any of the parties at the house of Zurich, or that there was anything more than a heated discussion upon the subject of religion. No words there used would afford the defendant the slightest justification or excuse for the subsequent assault with the knife claimed to have been made by him after he had withdrawn from the party to a place of safety, and voluntarily returned and made the assault upon the injured party. We are therefore unable to say that anything occurred at the house of Zurich which constituted a part of the res gestæ.

3. The instruction requested by the defendant, and refused by the court, is as follows: "And if you find from the evidence in this case that the defendant, John Kapelino, was intoxicated at the time of the alleged commission of the crime with which he stands charged, the jury may take into consideration that fact, in determining the purpose, motive, or intent with which he committed the act, if you find from the evidence in the case, and beyond a reasonable doubt, that the defendant did cut Gayo Bocich, as charged in the information. And the court further instructs you that in this case, if the jury believe from the evidence that, at the time of the commission of the alleged assault with intent to kill, the defendant was by reason of intoxication incapable of entertaining an intent to kill, he cannot be convicted of an assault upon Gayo Bocich, with intent to kill; but, if you convict at all, it must be of some lesser offense, to which such an intent is not material." The court subsequently, in its charge to the jury, fully instructed them upon this subject, using the following language: "There has been some evidence introduced in this case * * * tending to show that the defendant in this case, John Kapelino, at the time of the alleged assault, was intoxicated or drunk. The statutes of this state * * * provide as follows: 'No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive or intent is a

necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the ac-cused was intoxicated at the time in determining the purpose, mo-tive or intent with which he committed the act.' * * * I charge you * * * that this is competent evidence for you to consider in determ-ining beyond a reasonable doubt whether or not, at the time of making that assault, his mind was in condition to form an intent of any kind or form an intent to kill; or, in other words, whether his mind was in such condition that he knew right from wrong or the probable consequences or result of his acts; and, in this case, in considering the evidence in reference to the intoxicated condi-tion of the defendant, you have the right also to consider his evi-dence given on the stand here as to the circumstances and facts and the conditions which existed and took place at the time of the al-leged assault, in determining whether or not his mind was in such condition at the time that he was capable of forming an intent as charged in this information." The Legislature having defined what should be the effect of intoxication, and how far intoxication should be an excuse in the commission of an offense, it was proper for the court to give the jury the instruction in the language of the stat-ute, and the court very correctly instructed the jury, in that con-nection, that it was for them to determine by their verdict whether his mind was in such condition that he knew right from wrong or the probable consequence or results of his acts. In the case of People v. Odell, 1 Dak. 197, 46 N. W. 601, it was held by the late territorial Supreme Court that: "Intoxication may not under any circumstances be regarded as a defense, excuse or justification for the commission of crime, unless in case of a person who performs an act under such a state of intoxication as to be unaccompanied by volition, when he has lost control of his will, and is incapable of forming a purpose." The instruction of the court on its own motion in the case at bar was full and quite as favorable to the de-fendant as the law authorized, and we think the court was fully justified in refusing to give the instruction requested by the de-fendant, for the reason that it did not give or purport to give the language contained in the statute, and, the court having thus in-structed the jury correctly upon that subject, it was not required

to repeat the instruction by giving it in the form requested by the defendant.

4. It is further contended by the appellant that the court's refusal to instruct the jury that they might convict the defendant of assault and battery simply was a reversible error. This contention is clearly untenable. The jury, under the evidence, were authorized to find the defendant guilty of an assault with a deadly weapon with intent to murder, as charged in the information; or of assault with intent to do bodily harm with a sharp and dangerous weapon, as found by their verdict, and, if they were not satisfied beyond a reasonable doubt of the guilt of the defendant of either of these offenses, he was entitled to an acquittal, for, under the evidence, the jury would not have been warranted in finding him guilty of a simple assault. Where as under our statute there are degrees of crime, and the jury are charged with the duty of finding the degree, it is proper for the court to charge the jury in respect to the acts necessary to constitute the crime in each degree. State v. Hubbard, 20 S. D. 148, 104 N. W. 1120. But, where, as in the case at bar, the offense charged is not divided into degrees, the court is not required to charge the jury as to an offense that might be included in the charge made, but which the evidence would not warrant. Sparf v. U. S., 156 U. S. 51, 15 Sup. Ct. 273; People v. Lopez, 135 Cal. 23, 66 Pac. 965; People v. McNutt, 93 Cal. 658, 29 Pac. 243; People v. Barry, 90 Cal. 41, 27 Pac. 62; People v. Dartmore, 2 N. Y. Supp. 310; State v. Robertson, 20 South. 296; State v. Matthews, 36 South. 50; Robinson v. State, 84 Ga. 674, 11 S, E. 544. There is conflict in the decisions upon this subject, and the learned counsel for the defendant has cited quite a number of authorities holding a different view; but, in our opinion, the rule as announced in the cases cited is sustained by the weight of authority and the better reasoning of the courts. In the case at bar the defendant, under the information, could have been legally convicted either of assault with intent to kill or an assault with a sharp or dangerous weapon with intent to do bodily injury; but, under the evidence, he could not have been properly convicted of simple assault or assault and battery. The court very properly, therefore, instructed the jury that, if he was not guilty of either of

these offenses, it was their duty to acquit him, and this instruction was favorable to the defendant, of which he had no reasonable ground for complaint. The Supreme Court of California, in the analogous case of People v. Lopez, supra, uses the following language: "Again, the instruction complained of was not harmful to the defendant. The jury were fully instructed as to the ingredients of the offense of an assault with intent to murder and of an assault with a deadly weapon, and were then, in effect, told that if they were not satisfied that defendant was guilty on one of these offenses they must acquit him altogether. It will be presumed that they heeded this instruction and performed their whole duty in accordance with it. If they had not been satisfied beyond a reasonable doubt that the defendant was guilty of either of the higher crimes, but were satisfied that he was guilty of assault, under the instructions they would have acquitted him. The error, then, if any was committed, was favorable to the defendant, and the case should not be reversed on account of it."

We have not overlooked the other errors assigned, but, in our view, they have not sufficient merit to be entitled to a special consideration.

Finding no error in the record, the judgment of the circuit court is affirmed.