STATE of South Dakota, Plaintiff
and Appellee,

v.

Bradley Dean BLACK, Defendant
and Appellant.

No. 17551.

Supreme Court of South Dakota.

Argued on Rehearing on May 25, 1993.

Decided Sept. 22, 1993.

Mark Barnett, Atty. Gen., Frank E. Geaghan, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Michael J. Butler of Butler and Nesson, Sioux Falls, for defendant and appellant.

MILLER, Chief Justice (on rehearing).

On January 6, 1993, the first-degree murder conviction of Bradley Dean Black was upheld by plurality decision of this Court. *State v. Black,* 494 N.W.2d 377 (S.D.1993) (*Black I* ). Black petitioned for rehearing. We granted his petition. Upon reconsideration, although we ratify the result of *Black I* and its resulting judgment affirming Black's

conviction, we abandon this Court's earlier rationale.

## BACKGROUND

We need not engage in a lengthy recitation of the factual background of this case, as it is fully detailed in *Black I*. It is sufficient for our purposes to recall that Black was charged with first-degree murder in the December 6, 1990, death of Robert Hymore. At the close of his jury trial, Black argued to the trial court, outside the presence of the jury, that although he was charged with first-degree murder, that offense included the lesser offense of first-degree manslaughter. Therefore, he asserted, he was entitled to jury instructions on first-degree manslaughter.

The trial court listened to the parties' arguments and then stated it would apply only the legal test of the two-part "necessarily included offense test" in determining whether Black was entitled to instructions on first-degree manslaughter:

> I'm not going to rule on the factual basis on this matter. *I want this test to remain solely,* in my determination, *on the legal portion thereof,* and that therefore, *manslaughter,* even though our Court has not addressed it directly, *is not a lesser includable offense of first degree murder.* (Emphasis added.)

Thus, the trial court determined, as a matter of law, that first-degree manslaughter is never a lesser included offense of first-degree murder. The case was then submitted to the jury which, in addition to receiving instructions on first-degree murder, also received instructions on justifiable homicide. The jury returned a verdict against Black, finding him guilty of first-degree murder.

Black appealed his conviction. A plurality of this Court determined the trial court did not err in refusing to give the jury instructions on first-degree manslaughter. Black petitioned for rehearing. His petition was granted and we again heard oral argument on the same issue as presented in *Black I:* Whether the trial court erred in refusing Black's request that the jury be given instructions on first-degree manslaughter.

## DECISION

It is evident from the difficulties encountered by the trial courts, that our writings since *State v. Waff,* 373 N.W.2d 18 (S.D. 1985), do not sufficiently guide the bench and bar to a resolution of the question of how to determine what jury instructions are to be given in a particular homicide trial. It is, therefore, appropriate to review our previous decisions in this area in an effort to clarify the methodology to be followed in determining which instructions are appropriate in a particular case.

In 1985, this Court held, through the writing of Justice Wollman, that neither first-degree manslaughter nor second-degree manslaughter is "invariably" included within the charge of murder. *Waff,* 373 N.W.2d at 23. It is possible, however, that under the circumstances of a particular case, one, or both, of these lesser offenses could be found to be "necessarily" included offenses within the charge of murder. Whether this is true in any particular case would be determined on an individual basis after the trial court applied a legal test and a factual test to the case before it. Only if both prongs of the test were met could these two offenses be "necessarily included" in the charge of murder in any particular situation. *Id.* at 22. Despite *Waff's* recitation of the two prongs of the "necessarily included" test, *Waff* expressly declined to apply the legal prong stating: "Without deciding whether either the offense of first-degree manslaughter or of second-degree manslaughter, as defined by SDCL 22–16–15 and SDCL 22–16–20, ... satisfied the legal test, it is clear beyond peradventure that neither offense satisfied the factual test." *Id.*

*Waff's* two-part "necessarily included" test was specifically taken from the special concurrence of Justice Zastrow in *State v. Kafka,* 264 N.W.2d 702, 705 (S.D.1978). It is noteworthy that *Waff* observed that the "two-part test is now clearly the law in this state," *Waff,* 373 N.W.2d at 22, since, as we discuss more fully below, Justice Zastrow's writing was not this Court's most recent prior articulation of the two-part test, nor was it our first articulation of that test.

Indeed, a comparison of the test as stated in *Waff*, with its earlier articulation in *Kafka*, shows that *Waff* merely recited an abbreviated outline of the complete test. This is understandable as in *Waff* we were concerned with, and only applied, the factual prong of the test to conclude that no error was occasioned by that trial court's refusal to give requested jury instructions on the offenses of first or second-degree manslaughter. *Waff*, 373 N.W.2d at 18. Clearly, we had no need there to develop and discuss fully the legal prong of the test.

Today, however, we are called upon to decide the question left open by our decision in *Waff*. For that reason, we find it necessary to examine the lineage of the *Waff* two-part test. An examination of that lineage makes it clear that for at least the past century, this Court has engaged in legal and factual inquiries as to whether a requested instruction should be given by the trial court. Further, even a brief examination of that lineage indicates to us that *Waff's* abbreviated outline may be the source of much of today's difficulty in the application of the legal prong of the test to determine the propriety of granting a defendant's request for jury instructions on a lesser offense than that with which he has been charged.

*Kafka's* special concurrence had its origin in language taken from our unanimous decision of *State v. O'Connor*, 86 S.D. 294, 298, 194 N.W.2d 246, 248–49 (1972). *O'Connor* itself cited verbatim from *State v. Barber*, 83 S.D. 289, 292–93, 158 N.W.2d 870, 871–72 (1968), a unanimous decision authored by Judge Homeyer. Barber had been charged with, and found guilty of, statutory rape. Barber alleged error in the trial court's refusal to grant his request that the jury be instructed on the offense of assault and battery. We were called upon to consider SDC 34.3669, the precursor to SDCL 23A–26–8,[1] which then recited that "[t]he jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged[.]" *Barber*, 83 S.D. at 291, 158 N.W.2d at 871. We there held that

the use of force or violence is not an element of the crime of second degree rape, sometimes termed statutory rape, and thus an offense dependent thereon is not a necessarily included offense. Accordingly, the trial court did not err in refusing to instruct on assault and battery as an included offense.

*Id.*, 83 S.D. at 293, 158 N.W.2d at 872.

In reaching that decision, we recalled that on a previous occasion we had held it was not error to refuse to give requested instructions where the "two offenses are not the same nor, in our opinion, are they such related offenses as to include one within the other.... [We continued:] The two offenses simply stem from the same occurrence but they are not the same either in law or fact. They differ both in grade and kind." *Id.*, 83 S.D. at 291–92, 158 N.W.2d at 871 (citing *State v. Rasmusson*, 72 S.D. 400, 403, 34 N.W.2d 923, 924 (1948)).

We went on to examine two previous cases which involved rape allegations. We observed that where the degree of rape charged did not include the use of force, a requested instruction on assault was properly refused. *Id.*, 83 S.D. at 292, 158 N.W.2d at 871 (citing *State v. Pepka*, 72 S.D. 503, 506, 37 N.W.2d 189, 190 (1949)). On the other hand, if the degree of rape charged did include the use of force, a requested instruction on assault was properly granted. *Id.* (citing *State v. Crofutt*, 76 S.D. 77, 78, 72 N.W.2d 435, 436 (1955) (observing that assault is not a degree of the offense of rape)).

We then cited, with approval, a number of decisions from California which succinctly stated the methodology we had been applying through the years in our own Court to determine whether a defendant could be convicted of a lesser offense than charged if the defendant requested an instruction on the lesser charge. We looked to California since its statute on conviction of lesser offenses was "identical with our statute in essential particulars[.]" *Id.* We said there that

the test of a necessarily included offense is simply that where an offense cannot be

---

1. The modern version of this statute recites in part that "[a] defendant may be found guilty of

an offense necessarily included in the offense charged...." SDCL 23A–26–8.

committed without necessarily committing another offense, the latter is a necessarily included offense. If, in the commission of acts made unlawful by one statute the offender must always violate another, the one offense is necessarily included in the other. *Before a lesser offense can be said to constitute a necessary part of a greater offense, all the legal ingredients of the corpus delicti of the lesser offense must be included in the elements of the greater offense.* If an element necessary to establish the corpus delicti of the lesser offense is irrelevant to the proof of the greater offense, the lesser cannot be held to be a necessarily included offense.

*Id.,* 83 S.D. at 292–93, 158 N.W.2d at 871–72 (citations omitted) (emphasis added). It is apparent that we did not engage in a mere mathematical comparison of the number of elements in each crime for which jury instructions were sought in *Barber.* Rather, we engaged in an examination of the elements of the crimes themselves.

Subsequent to our statements in *Barber* of the legal test, we relied upon its language, including its above-emphasized language, in the unanimous opinion authored by Judge Wollman in *O'Connor,* 86 S.D. 294, 194 N.W.2d 246. That case involved an alleged error of the trial court due to its failure to give the jury requested instructions on a lesser offense than third-degree burglary, which was the offense with which the defendant was charged. On alternative grounds, we determined there was no error.

We first recalled an earlier decision wherein we determined that the lesser misdemeanor offense for which the instruction was sought is "not one of the degrees of the crime of burglary, but is an entirely independent crime." *O'Connor,* 86 S.D. at 297, 194 N.W.2d at 248 (citing *State v. Vierck,* 23 S.D. 166, 173, 120 N.W. 1098, 1101 (1909) (holding that because the crimes were independent, rather than crimes separated by degree, the statutory requirement that a jury convict on the lesser degree was not applicable)). We

restated, verbatim, the *Barber* legal test, compared the elements of the two crimes, and reaffirmed that "the two offenses are separate and distinct crimes." *Id.,* 86 S.D. at 299, 194 N.W.2d at 249. Hence, these were not crimes varying only in degree. We then held: "Under the test set forth in *State v. Barber,* supra, we conclude that the misdemeanor offense ... is not necessarily included in the offense of third degree burglary[.]" *Id.*

Alternatively, we reiterated a still older holding that "the trial court is not required to instruct the jury even as to those offenses which might be included but which the evidence would not warrant." *Id.* (citing *State v. Kapelino,* 20 S.D. 591, 598, 108 N.W. 335, 338 (1906)). We then held that merely examining the facts made it "overwhelmingly" evident that O'Connor could not be found guilty of the lesser offense. *Id.,* 86 S.D. at 299–300, 194 N.W.2d at 249.

The *Barber* legal test was again cited in its entirety in the special concurrence of Justice Zastrow in *Kafka,* 264 N.W.2d 702, wherein Kafka raised the identical issue previously resolved in *O'Connor.* His case was resolved on *O'Connor's* alternative holding. As there, the evidence against Kafka was such that his actions "amounted either to third degree burglary or they constituted no crime whatsoever.... Under no reasonable view of the evidence would a conviction of the [misdemeanor] offense ... have been warranted." *Id.* at 703 (citations omitted). We found no error was occasioned by the refusal to give the defendant's requested instruction because "[a] trial court is not required to instruct on matters that find no support in the evidence[.]" *Id.* (citations omitted). *O'Connor's* legal test for the determination of a necessarily included offense was specifically not addressed.

Justice Zastrow, however, specially concurred to first recite verbatim, and then apply, the *O'Connor* test, which was in turn, taken from *Barber.* He elaborated on the application of the legal test [2] and formulated

---

2. Justice Zastrow applied *Barber's* test, as recited in *O'Connor,* and concluded, contrary to the *O'Connor* Court, and subsequent decisions of this Court, that the lesser misdemeanor offense at

issue met the legal prong outlined in *Barber* and was a lesser included offense of third degree burglary. *Kafka,* 264 N.W.2d at 705–06.

a factual test from which he determined that the facts did not support giving the jury an instruction of the lesser misdemeanor offense. *Kafka*, 264 N.W.2d at 706. Much of his discussion, though neither accepted nor rejected by *Kafka*, was later adopted by then Chief Justice Fosheim for this unanimous Court in *State v. Blakey*, 332 N.W.2d 729 (S.D.1983). A much abbreviated version of Justice Zastrow's *Kafka* discussion was recited still later, in *Waff*, though as stated earlier, it was not there applied. Although *Blakey* contains the language upon which we resolve the issue today, it is instructive to look more closely at Justice Zastrow's discussion, as we have more often cited that discussion.

Justice Zastrow said there:

Before a lesser offense can be said to constitute a necessary part of a greater offense, *all the legal ingredients of the corpus delicti of the lesser offense must be included in the elements of the greater offense.* If an element necessary to establish the corpus delicti of the lesser offense is irrelevant to the proof of the greater offense, the lesser cannot be held to be a necessarily included offense.

*Kafka*, 264 N.W.2d at 705 (emphasis added) (citing *O'Connor*, 86 S.D. at 298, 194 N.W.2d at 248–49 (citing *Barber*, 83 S.D. at 292–93, 158 N.W.2d at 871–72)) *cited in, Blakey*, 332 N.W.2d at 731. This language, though omitted from *Waff*, was irrelevant to the resolution of that homicide case. Thus, no significance can be attached to its omission. Nor is the fact that we have not recited this language since two years prior to *Waff* significant, since the quoted language *has never been relevant to the resolution of any case subsequent to Blakey.*

■ It is clear, however, that the previously omitted language is relevant today.

**3.** SDCL 23A–26–7 recites:
"Whenever a crime is distinguished by degrees, a jury, if it convicts an accused, shall find the degree of the crime of which he is guilty and include that finding in its verdict. When there is a reasonable ground of doubt as to which of two or more degrees an accused is guilty, he can be convicted of only the lowest degree."

The crime of manslaughter falls within the class of crime known as homicide:

Homicide is the killing of one human being by another. It is either:
(1) Murder;
(2) Manslaughter;
(3) Excusable homicide;
(4) Justifiable homicide; or
(5) Vehicular homicide.

SDCL 22–16–1. Although homicide may be criminal, SDCL 22–16–1(1), (2) & (5), or noncriminal, SDCL 22–16–1(3) & (4), only two homicides have the *same* corpus delicti:

No person can be convicted of murder or manslaughter, or of aiding suicide, unless *the death of the person alleged to have been killed, and the fact of the killing by the accused* are each established as independent facts beyond a reasonable doubt.

SDCL 22–16–2 (emphasis added). Clearly, an application of this Court's complete legal test leads to the conclusion that "all the legal ingredients of the corpus delicti of the lesser offense [of manslaughter] must be included in the elements of the greater offense [of murder]." *Kafka*, 264 N.W.2d at 705 (Zastrow, J., concurring); *O'Connor*, 86 S.D. at 298, 194 N.W.2d at 249; *Barber*, 83 S.D. at 292–93, 158 N.W.2d at 871–72. Thus, the legal prong of the test is met. It is not significant that the legislature has divided murder into the offenses of first and second degree murder or that it has divided manslaughter into the offenses of first and second degree manslaughter as *the corpus delicti of all four offenses remains the same.* Thus we reverse the trial court's determination that manslaughter does not pass the legal prong of the "lesser included offense" of murder test, and hold, as a matter of law, manslaughter, whether first-degree or second-degree, always meets the legal prong of the two-part test.[3]

We need not decide whether SDCL 22–16–1, which defines homicide, also divides homicide into five degrees of homicide. Whether or not this is true, we have previously stated that "if in a given case, such as the one before us, the evidence does not admit of an instruction on first-degree manslaughter, the dictates of ... SDCL 23A–26–7 are inapplicable." *Waff*, 373 N.W.2d at 23.

This holding in no way affects the results of any of our previous decisions. The overwhelming majority of those cases have not involved greater and lesser offenses with the same corpus delicti. Indeed, with the probable lone exception of homicide offenses, two criminal offenses will rarely be found to pass the legal prong's barrier of an identical corpus delicti. But in the event they do pass this barrier, the inquiry into the legal sufficiency of a lesser included offense ends as there is an affirmative answer that the lesser offense meets the legal prong of being "necessarily included" in the greater offense.

█ In the more likely event that two offenses do not pass the corpus delicti barrier of the legal test, an inquiry must be made to determine whether the lesser offense, though not "necessarily included," is, nevertheless, a "lesser included" offense. This determination will continue to be answered in the same manner as it has in our previous decisions. That is by application of that portion of the legal test which we recite regularly in the cases and which was recently recited in State v. Wall, 481 N.W.2d 259 (S.D.1992)):

> The legal test is met if (1) all of the elements of the included offense are lesser in number than the elements of the greater offense; (2) the penalty for the included lesser offense must be less than that of the greater offense; and (3) both offenses must contain common elements so that the greater offense cannot be committed without also committing the lesser offense.

Id. at 264. Thus, in the usual event, this three-element test for legal sufficiency will continue to be utilized to determine whether the two offenses pass the legal prong of the "lesser included offense test."

It appears that with rare exception, in the quarter-century since Barber first articulated the form of the legal test as it reads today, homicide conviction appeals raising the "lesser included offense" objection have been resolved on the basis of the factual test. E.g. State v. Tapio, 459 N.W.2d 406 (S.D.1990); State v. Gregg, 405 N.W.2d 49 (S.D.1987); State v. Woods, 374 N.W.2d 92 (S.D.1985); Waff, 373 N.W.2d 18. However, on occasion, we have resolved homicide conviction appeals on the basis of the legal prong of the two-part test.

In a 1992 case, the defendant had been convicted of second-degree manslaughter. Wall, 481 N.W.2d 259. On appeal she urged error by the trial court for its failure to give jury instructions on the offense of careless driving. Three Justices concurred in the conclusion of Justice Henderson that the urged lesser offense failed the legal prong of the two-part test. Clearly, these two offenses do not pass the corpus delicti barrier. Thus, the three-element legal test would be utilized with the result that that decision could be no different were it decided today.

Ten years earlier, in 1982, we were presented with a defendant who had been convicted of second-degree murder though he had been charged with first-degree murder. State v. Lohnes, 324 N.W.2d 409 (S.D.1982), cert. denied, 459 U.S. 1226, 103 S.Ct. 1232, 75 L.Ed.2d 466 (1983). That defendant had not requested a jury instruction on the lesser offense and had objected to the trial court giving the instruction to the jury at the request of the State. We observed there, without deciding, that the defendant had been convicted "of the offense of second-degree murder, an offense that he was never charged with and which has distinctly different elements than first-degree murder." Id. at 412. However, Lohnes was resolved, not on the basis of fulfilling or not fulfilling the legal test, but on the question of whether there had been a violation of the defendant's right to be tried or acquitted on the charge in his indictment so that the accused "may be prepared to defendant himself at the trial." Id. Thus, we held "it was error to charge the jury that, in order to convict, it was not necessary for the state to make out such a case as it had set out in the indictment." Id. at 413 (citing State v. Reddington, 7 S.D. 368, 380–81, 64 N.W. 170, 174 (1895)). Lohnes would be resolved today as it was in 1982.

█ Although we hold today that the trial court erred when it determined the lesser offense of first-degree manslaughter, as proposed by Black, did not pass the legal test, the trial court's failure to give the proposed instructions is not reversible error un-

less the factual prong of the "lesser included offense" test is also met. *Wall*, 481 N.W.2d at 264. The trial court specifically declined to make a determination of the factual prong of the test. This was error. The trial court is to make a determination of whether a defendant is entitled to a lesser offense instruction based on its application of *both the legal AND factual prongs* of the test. In the usual event, a trial court's failure to apply both prongs precludes meaningful review of the decision below and we usually will not address a question which the trial court has not had an opportunity to pass on. *Weaver v. Boortz*, 301 N.W.2d 673, 673 (S.D.1981); *Jennings v. Hodges*, 80 S.D. 582, 591, 129 N.W.2d 59, 64 (1964).

Nevertheless, the record shows arguments were made to the trial court on the application of the factual test. Further, the facts are adequately revealed in the settled record. Therefore, rather than remanding this action to the trial court for an application of the factual test, we will look to the facts ourselves to resolve the factual prong of the "lesser included offense test." [4] We again remind the trial courts, however, that this application is properly made in the first instance at trial and it is error for the trial court to fail, or refuse, to apply both prongs of the test on the record.

■ In order to meet the factual test, evidence must be presented which would support a conviction of a lesser charge. *Wall*, 481 N.W.2d at 264. "[T]he trial court is not required to instruct the jury even as to those offenses which might be included but which the evidence would not warrant." *O'Connor*, 86 S.D. at 299, 194 N.W.2d at 249. "The essence of the factual test is that there must be sufficient evidence, when read in the light most favorable to the defendant, which would justify the jury in concluding that the greater offense was not committed and that a lesser offense was in fact, committed." *Gregg*, 405 N.W.2d at 51; *Tapio*, 459 N.W.2d at 409. There is no error in refusing to give

requested instructions where "[u]nder no reasonable view of the evidence would a conviction of the [lesser] offense ... have been warranted." *Kafka*, 264 N.W.2d at 703.

Black requested jury instructions on three of the four statutory subsections of first-degree manslaughter. First-degree manslaughter is defined at SDCL 22–16–15, and in relevant part recites:

> Homicide is manslaughter in the first degree when perpetrated:
>
> . . . . .
>
> (2) Without a design to effect death, and in the heat of passion, but in a cruel and unusual manner;
>
> (3) Without a design to effect death, but by means of a dangerous weapon;
>
> (4) Unnecessarily, either while resisting an attempt by the person killed to commit a crime or after such attempt shall have failed.

We have reviewed the record and find there is evidence to support Black's requested lesser offense instruction. However, we agree with the conclusion of Justice Henderson in his writing in *Black I*, that a rational jury would have found the evidence supported only the offense of which he was convicted. *Black I*, 494 N.W.2d at 383 (Henderson, J., concurring in result). The jury would not be warranted in convicting Black of first-degree manslaughter. *Waff*, 373 N.W.2d at 22. He was guilty of the offense of which he was convicted or he was guilty of nothing. *State v. Rich*, 417 N.W.2d 868, 871 (S.D.1988); *State v. Pickering*, 317 N.W.2d 926, 927 (S.D.1982); *State v. Feuillerat*, 292 N.W.2d 326, 334 (S.D.1980); *Kafka*, 264 N.W.2d at 703.

Conviction affirmed.

HENDERSON, J., concurs specially.

---

4. This writer has previously stated his belief that the better course of action is to remand this case to the trial court so that it can fulfill its duty to apply both the legal and factual prongs of the "lesser included offense test." *Black I*, 494 N.W.2d at 386 (Miller, C.J., dissenting). While

not deviating from that belief, this writer concedes that under the unique facts of this case, the record contains sufficient material to enable this Court to perform what is more properly the duty of the trial court.

WUEST and SABERS, JJ., concur in result.

AMUNDSON, J., concurs in part and dissents in part.

HENDERSON, Justice (specially concurring).

In my concurring writing in *Black I*, 494 N.W.2d 377, 383 (S.D.1993), I expressed no opinion on the majority's analysis of the legal test. Rather, I voted to affirm the trial court because the facts did not warrant the lesser included offense instruction noting "that both the prosecutor and defense counsel argued the factual basis of whether to include the lesser included offense instruction." *Black I* at 384. Additionally, the trial judge, although posturing his decision upon the legal test, admitted, "Even if I were to find [that the legal test has been met], I would struggle with the factual basis." *Id.* at 383. Once again, the Court affirms Black's conviction, this time concurring with my view that the facts do not substantiate a first-degree manslaughter instruction.

I also concur with the majority's discourse of the legal test. Wiping away the cobwebs from *State v. Barber*, 83 S.D. 289, 158 N.W.2d 870 (1968), a clearer path has been carved for the trial courts of this state. At the same time, our precedents remain intact, as does the "lesser included offense test" followed by *State v. Wall*, 481 N.W.2d 259 (S.D.1992).

WUEST, Justice (concurring in result).

I cannot join the majority opinion for a variety of reasons. When I voted for rehearing, it was my hope this court could reach some consensus in this case. Apparently, I was wrong. After long and careful consideration, I still adhere to my vote and writing in *Black I*. It is my belief we have reached a just result but left the law in utter confusion—that is unfortunate!

SABERS, Justice (concurring in result).

I vote to affirm based on the majority writing in *Black I*, which I incorporate herein. In doing so, I reject the interpretation of decisions as set forth in the present writing of Chief Justice Miller. These interpretations appear inconsistent with this court's decision in *State v. Marshall*, 495 N.W.2d 87 (S.D.1993), a 4–1 decision handed down one week after *Black I*.

AMUNDSON, Justice (concurring in part and dissenting in part).

I concur with everything in the majority writing as it relates to legal test analysis. I further agree wholeheartedly that "there is evidence to support Black's requested lesser offense instruction." I part company with the majority, however, when it jumps into the jury box to hold that the jury would have convicted Black only as to the offense charged. I base this dissent on my previous dissent in *Black I*. Therein, I relied on *People v. Shaw*, 646 P.2d 375 (Colo.1982), which stated:

"We do not say that [manslaughter] should have been the verdict, or that the jury would have found differently had they been properly instructed. What we do say is that there was not an entire absence of evidence tending to establish the crime of manslaughter, and that defendant was entitled to an instruction with reference thereto. It is obviously impossible for us to hold that the error thus committed was without prejudice."

*Id.* at 379 (quoting *Crawford v. People*, 20 P. 769, 770–71 (Colo.1888)). Likewise, it was prejudicial to deprive Black of his lesser instruction on manslaughter.

The majority agrees that Black was entitled to a manslaughter instruction but then goes a step further and finds as a fact that the jury, if given the opportunity to consider the lesser included instruction, would have still convicted Black of first-degree murder. If conflicts in evidence exist and credibility of witnesses needs to be determined, which is the case here in view of Black's testimony, it is the jury's role to make the factual findings on such matters. *State v. Wooley*, 461 N.W.2d 117 (S.D.1990); *State v. Gallipo*, 460 N.W.2d 739 (S.D.1990); *State v. Peck*, 459 N.W.2d 441 (S.D.1990).

Whether evidence is overwhelming or not, the jury must decide whether or not the defendant is guilty beyond a reasonable

doubt and neither a trial judge nor this court should assume such a role. *United States v. White Horse,* 807 F.2d 1426 (8th Cir.1986). I cannot assume, nor will I assume, the role of a juror in this case. Therefore, I would remand this case back for retrial so that a jury can consider the case with a manslaughter instruction. Then, the jury can perform its role of determining the facts and apply the law to those facts.