STATE, Respondent v. WAUGH, Appellant

(127 N.W.2d 429)

(File No. 10059. Opinion filed April 8, 1964)

**Samuel W. Masten,** Canton, for Defendant and Appellant.

**Frank L. Farrar,** Atty. Gen., **Alfred E. Dirks,** Asst. Atty. Gen., Pierre, **H. L. Hollmann,** State's Atty., Chamberlain, for Plaintiff and Respondent.

RENTTO, J. Beverly Waugh was arraigned on an information charging her with the crime of murder in the death of one Myron Menzie. To this she entered a plea of not guilty and an additional plea of not guilty by reason of insanity. The jury

found her guilty of manslaughter in the first degree. She appeals from the judgment entered on October 3, 1962 sentencing her to life imprisonment. The sufficiency of the evidence to justify the verdict is not questioned. Her assignments present several claimed trial errors, but she emphasizes those which question an instruction given on the issue of insanity.

Defendant was a native of the Chamberlain, South Dakota, area. As a child she had difficulty with her studies in school, but did complete eight grades after which she went to work in a commercial laundry doing menial tasks. Her intelligence rating was on the low side of normal. Socially she was a withdrawn type of person. Her mannerisms and thinking were typically male progressing to the point that she began to display a Lesbian behavior pattern. At the time of the incident involved she was 24 years of age.

In the year prior to the homicide in question she became interested in a 19-year-old girl employed in the same laundry. This developed into a serious love affair. During this relationship the other girl became romantically involved with Myron Menzie, culminating in their engagement. The latter relationship increasingly disturbed the defendant to the degree that she made threats against his life. Late in the afternoon of May 30, 1962, defendant observed these two together in his car in Pukwana, South Dakota. She followed their car to Chamberlain, where she intercepted it on one of the downtown streets about 7 p. m.

From the evidence as to what happened next the jury could find that the defendant got out of her car, carrying a 22-rifle, and told the deceased to get out of his car. This he refused to do. She then walked over to the decedent's car, opened the door on the driver's side, and told him to get out of the car or she would shoot him there. Upon his refusal of her request she shot him. The bullet which entered his chest passed through a portion of his lung, heart and liver. He was dead when the doctor arrived at the scene a short time after the shooting.

In its Instruction No. 8, being 520.06-D of the South Dakota Pattern Jury Instructions, the court explained our right and wrong rule of testing criminal responsibility, as set out in SDC

13.0201, see also State v. Leehman, 2 S.D. 171, 49 N.W. 3, State v. Violett, 9 S.D. 292, 111 N.W.2d 598, State v. Behan, 80 S.D. 370, 124 N.W.2d 179, and defined insanity. Defendant in argument has criticized the rule, but since it is of statutory origin any changes therein must come from the legislature. She also finds fault with the definition of insanity and urges that we alter it in the light of claimed advances made in this field by the medical sciences in recent years. On this appeal we may not consider that matter because no objection was made or exception taken to this part of the instruction, State v. Poppenga, 76 S.D. 592, 83 N.W.2d 518, but this should not be read to imply our approval of such definition.

Objection, however, was made to that part of the instruction dealing with the burden of proof on the issue of insanity. The remainder of the questioned instruction is as follows:

"You are further instructed that the law does not excuse the commission of the crime unless the insanity is of such a character that it actually renders the person incapable of distinguishing between right and wrong in respect to the particular act charged at the time of its commission; but to establish insanity as a defense, positive or direct testimony is not required, nor is it necessary to establish this defense beyond a reasonable doubt. It is sufficient if the jury is reasonably satisfied by the weight or preponderance of the testimony that the accused, Beverly Waugh, was, at the time she committed the act, if she did commit it, incapable of distinguishing between right and wrong.

"Therefore, the court instructs the jury that if you believe from all the evidence beyond a reasonable doubt that Myron Menzie is dead, and that the defendant, Beverly Waugh, killed the said Myron Menzie, and if you believe that the defendant at the time was so perverted and deranged in one or more of her mental faculties as to be incapable of understanding, at the time she killed Myron Menzie, if you find beyond a reasonable doubt that she did kill him, that such killing was wrong, and that the defendant, Beverly Waugh, at the time, was.

incapable of understanding that this act of killing was a violation of the laws of God and society, if the jury finds that she was so insane, you should find her not guilty by reason of insanity. The law does not excuse the crime unless the derangement is so great that it actually renders a person incapable, at the time of its commission, of distinguishing between right and wrong in respect to the particular act charged and proved against her.

"For the purpose of throwing light upon the mental condition of the accused at the time of the alleged offense, the jury may consider evidence of her mental state both before and after that time.

"Temporary insanity, as well as insanity of longer duration, is recognized by the law. If, from all the evidence in the case, the jury has a reasonable doubt whether the defendant was sane at the time of the alleged offense, she should be acquitted, even though it appears she was sane at earlier and later times."

The objection to this portion of the instruction complained that it placed an undue burden on her and pointed out that where insanity has through the evidence become an issue it is the burden of the state to prove beyond a reasonable doubt that the defendant was sane.

The following portion of Instruction No. 9 is also pertinent to this issue:

"The jury is further instructed that every person is presumed to be sane unitl the contrary is shown. If no evidence of insanity has been given, then you would presume the defendant to be sane, and to be responsible for her act. However, when, as in this case, evidence has been introduced tending to prove the defendant is not sane, then the question of whether or not the defendant is responsible for her acts becomes a question for you to determine from all the evidence bearing upon it; and if, after a careful consideration of all the evidence in this case, you believe beyond a reasonable

doubt that the defendant shot and killed the deceased in the manner and form charged in the information, and you further believe that the defendant, at the time of the killing, was a lunatic or insane person, or was a person of unsound mind, or was temporarily or partially deprived of her reason to such an extent that she was incapable of knowing the wrongfulness of her act, then it will be your duty to acquit the defendant on the ground of insanity; and you are instructed that if you acquit the defendant on the ground of insanity, you should state that fact in your verdict.

"You are further instructed in this connection that if, after a full and careful consideration of the whole case, you are satisfied that the defendant shot and killed Myron Menzie in the manner and form charged in the information, but you entertain a reasonable doubt as to the sanity of the defendant, Beverly Waugh, at the time she fired the fatal shot, you will then give her the benefit of such doubt, and return a verdict of not guilty by reason of insanity."

As to where the burden lies in this respect there are two rules. 22A C.J.S. Criminal Law § 576; 20 Am.Jur., Evidence, § 155. Professor Weihofen in his treatise entitled "Mental Disorder as a Criminal Defense," at p. 212, states: "American courts are almost evenly divided on the question of who has the ultimate burden of proof—whether the defendant bears the risk of establishing that he was so disordered mentally as to be irresponsible for his criminal act, or whether the prosecution has the burden of proving responsibility." Under the first rule the ultimate issue is the insanity of the accused, while under the second it is his sanity. From State v. Violett, supra, it is clear that we are aligned with those courts that apply the latter rule.

The courts which adhere to this rule have repudiated the doctrine that insanity is an affirmative defense which the accused must establish. As pointed out by Weihofen, supra, at p. 226, "These courts hold, on the contrary, that since a sound mind is essential to criminal responsibility, the prosecution must prove beyond a reasonable doubt that the accused was men-

tally capable of the criminal intent required to constitute the crime charged, as it must prove any other material fact. Of course, until the issue of sanity is raised by evidence, the presumption that all persons are sane relieves the prosecution from introducing evidence on the subject."

Chief Justice Weintraub of the Supreme Court of New Jersey in an article entitled "Criminal Responsibility: Psychiatry Alone Cannot Determine It" in Vol. 49, American Bar Association Journal, at p. 1076, writes: "Although we sometimes speak of insanity as a 'defense,' it is not a 'separate' defense to a case the state has otherwise established. Rather it is a denial of an essential ingredient of the state's case—**mens rea**." SDC 13.0201, which is the basis of our rule, classifies lunatics, insane persons, and all persons of unsound mind, including persons temporarily or partially deprived of reason, upon proof that at the time of committing the act charged against them they were incapable of knowing its wrongfulness, as persons not capable of committing crimes. On the other hand, SDC Ch. 13.05 enumerates defensive matters that excuse or exonerate from punishment. Insanity is not included in the list.

■■ Sanity and criminal responsibility are presumed, but this is rebuttable. Consequently, it is not necessary for the state in the first instance to prove the sanity of the accused. Evidence of the contrary is required to make that an issue.

■ On the question of her mental condition defendant introduced both lay and expert testimony. The jury were instructed that sufficient evidence had been introduced to put in issue the sanity of the defendant at the time the act was committed. This was not questioned by the state. Accordingly, under our rule it then became the burden of the state to prove beyond a reasonable doubt that the accused was sane enough to be held criminally responsible. State v. Violett, supra. The jury were not so advised.

■ Instead, the part of Instruction No. 8 which reads "but to establish insanity as a defense, positive or direct testimony is not required, nor is it necessary to establish this defense beyond a reasonable doubt. It is sufficient if the jury is reasonably sat-

isfied by the weight or preponderance of the testimony that the accused, Beverly Waugh, was, at the time she committed the act, if she did commit it, incapable of distinguishing between right and wrong" placed on defendant the burden of proving insanity as a defense. It is not so expressly stated, but that is the only conclusion which can reasonably be drawn therefrom. Similar language was approved in Missouri, State v. Coats, 174 Mo. 396, 74 S.W. 864, but in that jurisdiction insanity is a defense and the defendant has the burden of sustaining it. State v. Cockriel, 314 Mo. 699, 285 S.W. 440. See also State v. Adams, Mo., 355 S.W.2d 21. This incorrect statement as to the burden of proof carries over into and necessarily infects the next paragraph of Instruction No. 8 and the first paragraph of Instruction No. 9.

In Instruction 8 and 9 there are statements that if the jury entertain a reasonable doubt as to the sanity of the defendant at the time of the killing they should give her the benefit of such doubt and return a verdict of not guilty. This admonition is in accord with our rule that it is the burden of the prosecution to prove beyond a reasonable doubt that the accused was sane enough to be held criminally responsible. However, it does not cure the affirmative misdirection previously given that the defendant had the burden of proving her insanity or the failure to charge that the state has the burden of proving defendant's sanity beyond a reasonable doubt.

 We are unable to conclude that these errors in the challenged instruction did not prejudice the defendant. They had the effect of placing on her the burden of establishing that she was irresponsible for her act, while under our rule it is the burden of the state to establish her responsibility. To this extent the burden of proving innocence was put on her. That she is not required to do. State v. Trudell, 49 S.D. 532, 207 N.W. 465; Minner v. United States, 10 Cir., 57 F.2d 506; Boatright v. United States, 8 Cir., 105 F.2d 737. Rather it is the burden of the prosecution to establish her guilt beyond a reasonable doubt.

Since this necessitates a reversal of the conviction and requires the granting of a new trial, we have considered the other

matters assigned and urged by the defendant. In our view they are not meritorious.

Reversed.

All the Judges concur.