**STATE of South Dakota, Plaintiff and Appellee,**

**v.**

**Donald R. ROUGH SURFACE, Defendant and Appellant.**

No. 15858.

Supreme Court of South Dakota.

Argued March 21, 1988.

Decided May 3, 1989.

John W. Bastian, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

Randolph J. Seiler of Seiler and Cain, Mobridge, for defendant and appellant.

MORGAN, Justice.

Donald Rough Surface (Donald), was tried on a six-count information charging him with first-degree robbery, first-degree rape, first-degree assault, first-degree murder by premeditated design, first-degree murder in the commission of a felony—rape, and first-degree murder in the commission of a felony—robbery. This appeal lies from his conviction on all six counts. We affirm.

The charges against Donald arise from the particularly brutal death of his uncle, Daniel Rough Surface (the victim), who's body was found in the crawl space beneath a grain elevator in Mobridge, South Dakota. The victim's body was naked, bloody, badly beaten, and burned. Evidence revealed that the victim had also been raped. The police discovered Donald sleeping next to the victim. Donald had blood on his jacket, pants, underwear, shoes, and hands. The victim's knife, billfold and post office box key were found in Donald's jacket pockets.

At 3:05 a.m., October 25, 1986, the Mobridge police, acting on a report, discovered the body of the victim in the crawl space under the abandoned grain elevator. The crime had been reported to the police by Mike Vermillion (Vermillion), who had also been sleeping under the elevator. Vermillion testified that he had crawled under the elevator at about 11 p.m. on October 24, 1986, to sleep. Vermillion further testified that he left the victim and Donald outside the grain elevator where all three had been drinking and visiting. When Vermillion awoke and discovered the body, he immediately went to the police station and thereafter led the police to the scene where the victim and Donald were found.

Donald testified that he had commenced drinking early on the morning of October 24th and continued steadily throughout the day. He testified that he and Vermillion had gone to the elevator at approximately 10:30 p.m. and sat in the crawl space and drank. Donald testified that he had not seen the victim all day and that he had passed out at approximately 11:30 p.m. On October 25th, commencing at about 4:00 a.m., Donald had been given his *Miranda* warnings and questioned by the Mobridge Police. Questioning continued until approximately 7:00 a.m., when Donald indicated that he no longer wished to talk. Donald testified that he did not remember being questioned during that period of time and remembered nothing until he was placed in a jail cell at 7:00 a.m.

Donald was arraigned on an information charging aggravated assault, robbery, rape, murder in the first degree, felony murder—rape, and felony murder—robbery. To the charges, Donald pled not guilty and not guilty by reason of insanity. Donald was tried before a jury in Walworth

County, South Dakota. The jury returned a verdict of guilty on all six counts and Donald was sentenced to concurrent terms of life imprisonment and fifteen years in the South Dakota State Penitentiary. Donald appeals raising eighteen issues which we have consolidated into fifteen.

We will first look at the alleged pretrial errors, as raised by Donald.

### THE RIGHT TO A JURY DRAWN FROM A FAIR CROSS–SECTION OF THE COMMUNITY.

Prior to trial, defense counsel filed a notice of objection to the jury panel, wherein he objected to the underrepresentation on the prospective jury panel of members of Donald's race, Native Americans. The matter was brought on for a pretrial hearing after which the trial court overruled Donald's objection.

On appeal, Donald urges that the absence of all Native Americans on his petit jury panel, coupled with the presence of only one Native American on the petit jury panel that was at issue in *State v. Soft*, 329 N.W.2d 128 (S.D.1983), is prima facie evidence that there is racial discrimination in jury selection in Walworth County. Donald relies on SDCL 16–13–10.1 which, in pertinent part, provides: "It is the policy of the state of South Dakota that all litigants in the courts of this state entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross-section of the community in the municipality, district or county where the court convenes...." He also relies on *State v. Hall*, 272 N.W.2d 308, 311 n. 1 (S.D.1978), for the proposition that "smaller percentages (those of less than 15 percent) over a long period of time may support a challenge that the selection process does not provide a fair cross-section."

We find Donald's argument unpersuasive for the reason that he relies on only two factors: the fact that there were no Native Americans on the panel from which his jury was chosen, and the fact that there was only one Native American on the panel discussed in *Soft, supra*. In our opinion, this does not establish a prima facie case. SDCL ch. 16–13, which prescribes the method of selection of jury lists and panels, provides for selection of names for the master jury selection list for the county by the jury selectors, the clerk of the circuit court, the chairman of the board of county commissioners and the county auditor. The election precincts constitute jury districts, each of which is to be represented on the master jury list in proportion to the number of votes cast for governor in the last gubernatorial election. The precinct (voters) registration list constitutes the list from which the selectors shall prepare the master jury list.

In *United States v. Clifford*, 640 F.2d 150 (8th Cir.1981), where the federal jury selection process was attacked, the court upheld the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861 et seq., which provides for random selection of jurors from voter registration lists. Section 1861 tracks word for word the provision of the first sentence of SDCL 16–13–10.1.

■ In *Soft, supra*, we noted that statistics showed 5.86% of the Walworth County population and 9.36% of the City of Mobridge population were comprised of Native Americans. The record does not reflect percentages of those who were registered to vote. In *Clifford, supra*, the Eighth Circuit said:

> [T]here has been no showing that juries are not selected from a fair cross section of the community or that there has been exclusion of jurors based on any basis other than failure to register to vote. .... The mere fact that one identifiable group of individuals votes in a lower proportion than the rest of the population does not make a jury selection system illegal or unconstitutional.

640 F.2d at 156. We affirm the decision of the trial court to deny the objection.

### DID THE TRIAL COURT ERR IN FAILING TO SUPPRESS EVIDENCE OBTAINED PURSUANT TO A SEARCH WARRANT DATED THE 25TH DAY OF OCTOBER, 1986?

Donald sought, by suppression motion, to suppress certain evidence which he alleged to have been taken pursuant to a search

warrant that was not properly conceived or executed. He presents a laundry list of some ten specific defects ranging from the adequacy of the affidavit upon which it was issued to the failure to return a proper inventory. We have examined the warrant, the affidavit, and the record, and find Donald's contention to be wholly without merit. We affirm the trial court's denial of the suppression motion.

DOES THE SEROLOGICAL ELECTRO-PHORESIS TECHNIQUE FOR TESTING BLOOD STAINS MEET THE REQUIREMENTS OF THE *FRYE* RULE?

By pretrial motion, Donald sought suppression of blood stain evidence upon the grounds that the technique employed by State's expert, serological electrophoresis, does not enjoy scientific acceptance among impartial and disinterested experts so as to meet the requirements laid down in *Frye v. United States*, 293 F. 1013 (C.A.D.C.1923). Donald urges us to adopt the rationale of the Supreme Court of Michigan found in *People v. Young*, 425 Mich. 470, 391 N.W. 2d 270 (1986). We disagree. This issue is governed by settled South Dakota law.

■ The *Frye* test for admission of testimony relating to a scientific principle or discovery is whether the principle has become "sufficiently established to have gained general acceptance in the particular field in which it belongs." 293 F. at 1014. This court first approved the *Frye* test for admissibility of expert testimony in *State v. Helmer*, 278 N.W.2d 808 (S.D.1979). Further, in *State v. Dirk*, 364 N.W.2d 117 (S.D.1985), we found electrophoretic testing to be sufficiently reliable to pass the *Frye* test. *See State v. Adams*, 418 N.W.2d 618 (S.D.1988), for a comprehensive analysis of electrophoretic testing and the *Frye* test.

DID THE TRIAL COURT ERR IN FAILING TO SUPPRESS STATEMENTS MADE BY THE DEFENDANT AND BY FAILING TO ENTER FINDINGS OF FACT AND CONCLUSIONS OF LAW ON THE RECORD?

The thrust of Donald's argument is not error in failing to suppress statements made by him, but rather that because the trial court failed to make and enter specific findings of fact and conclusions of law in conformity with our decisions in *State v. Kiehn*, 86 S.D. 549, 199 N.W.2d 594 (1972), and *State v. Thundershield*, 83 S.D. 414, 160 N.W.2d 408 (1968), remand is warranted.

Donald's motion for suppression of the statements made by him at the police station immediately after his arrest was brought on for a pretrial hearing. Witnesses who testified indicated that Donald was advised of his *Miranda* rights, voluntarily responded to questions, and was coherent at the time. Questioning ceased when Donald indicated that he did not wish to continue. The trial court made findings and conclusions on the record as follows:

The court finds that the State has established beyond a reasonable doubt that the statements were voluntary and made of the Defendant's own free will, after having been duly advised of his Miranda rights, that he waived his constitutional rights and voluntarily responded to questioning, that the questioning ceased immediately upon Defendant's request that he wished to answer no further questions.

There is no indication of any undue force or influence on the part of the police officers. There is an indication that the Defendant had been drinking alcoholic beverages and was under the influence but no evidence to indicate that this was to such an extent that he couldn't comprehend or intelligently answer questions.

The court finds also that the statements were not illegally obtained in violation of the United States or State Constitutions. The motion is denied.

■ In *State v. Hintz*, 318 N.W.2d 915 (S.D.1982), we said that when it is patently clear, on the record, that appellant knowingly, intelligently, and voluntarily waived his rights under the *Miranda* rule and that the statements made by him were voluntary beyond a reasonable doubt, remand of the case was unnecessary. We find the instant case to comport with *Hintz*. However, we strongly urge trial courts to enter specific findings and conclusions in matters

of such far-reaching importance. Trial courts are well aware that issues such as voluntariness of statements are often appealed and it would be prudent for them to protect their decisions by filing specific findings of fact and conclusions of law. This is especially true when the matter is considered at a pretrial hearing, rather than in the course of trial.

We next examine several issues dealing with trial rulings.

DID THE TRIAL COURT ERR IN ALLOWING THE STATE TO AMEND THE INFORMATION O THE FIRST DAY OF TRIAL WITH RESPECT TO THE CHARGES AGAINST THE DEFENDANT?

On the day trial was scheduled to open, and before voir dire commenced, State informed the court that it would be submitting an amended information which separated Count IV of the original information into three separate counts. Donald strenuously objected and the court delayed its ruling until the submission of the amended information and a more complete record could be made. The voir dire proceeded through the morning.

At the commencement of the afternoon session, an in-camera hearing was held with regard to the amendment. Count IV of the original information charged Donald with murder in the first degree "in that he did, without authority of law and with a premeditated design, affect the death of Daniel Rough Surface or caused said death when engaged in the perpetration of a rape and/or robbery." The amended information charged three separate counts: premeditated murder, felony murder—rape, and felony murder—robbery. The trial court granted the motion to amend upon the grounds that no new offenses were alleged and the amendment merely stated more clearly that which was originally charged. The trial court also noted that State had indicated they would move for amendment prior to commencement of trial and that the voir dire had begun merely for the purpose of expediency.

On appeal, Donald urges that he was substantially prejudiced because the trial had commenced and that new charges were added. SDCL 23A–6–19 (Rule 7(e)) [1] prescribes the standards for amendment of an information before and during trial. In this case, the trial court is correct in its ruling that the amendment may be considered before or during trial. Since the trial court found that the amendment did not charge any new offense, with which we agree, no preliminary hearing was necessary. Considering that no new offense was charged, we cannot see where Donald was prejudiced. Donald does not point to any actual prejudice nor did he make any motion for continuance when the amendment was allowed.

DID THE TRIAL COURT ERR IN FAILING TO ALLOW CROSS-EXAMINATION OF TWO KEY PROSECUTION WITNESSES CONCERNING MATTERS IN THE WITNESS' JUVENILE RECORDS?

At trial, one juvenile testified that he had seen Donald with the victim in the early evening hours of October 24, 1986. Another juvenile testified that he loaned a shirt to Donald on October 24. Donald sought to cross-examine these juveniles based on their record as juvenile delinquents. At an in-camera proceeding, the trial court allowed defense counsel to examine one of the juveniles. At the conclusion of these proceedings, the trial court ruled that defense counsel would be precluded from cross-examining the juveniles based on

---

1. SDCL 23A–6–19 provides:
    If trial has not commenced, a prosecuting attorney may amend an information to allege, or to change the allegations regarding, any offense arising out of the same alleged conduct of the defendant that gave rise to any offense alleged in the original information. If the change alleges a new offense, the defendant has the right to a preliminary hearing on the new offense.

    After commencement of a trial, the trial court may permit the prosecuting attorney to amend the information at any time before a verdict or finding is made, if no additional or different offense is charged and substantial rights of the defendant are not thereby prejudiced. An amendment may charge an additional or different offense with the express consent of the defendant.

their juvenile delinquency status. The trial court concluded that the juveniles' records would not have been admissible, pursuant to SDCL 19–14–15,[2] because they would not impeach the credibility of an adult insofar as the underlying offenses were not felonies, nor did they relate to dishonesty or false statements, pursuant to SDCL 19–14–12.

Citing us to *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), Donald argues that a defendant has a constitutional right to cross-examine witnesses as to their juvenile record for bias and prejudice where they were susceptible to acting out of fear or concern of possible jeopardy to their status. We find Donald's reliance on *Davis* misplaced.

In *Davis*, the United States Supreme Court discussed the possible conflict between a defendant's right of cross-examination under the Confrontation Clause and State's important interest in protecting the anonymity of juvenile offenders by statutes such as SDCL 19–14–15. That pronouncement, adopted by Supreme Court Rule in 1978, was patterned after Federal Rules of Evidence 609(d), and no doubt found some guidance in the 1974 *Davis* decision. The Court distinguished between a general attack on credibility, which it characterized as an effort "to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony[,]" and a more particular attack on the witness' credibility "effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." 415 U.S. at 316, 94 S.Ct. at 1110, 39 L.Ed.2d at 353–54.

In *Davis*, the juvenile witness, a probationer from a burglary charge, was the only witness to have seen Davis in the vicinity of the crime with which he was being tried. Thus, the juvenile witness provided the crucial link in State's proof of defendant's ·act. The question which demanded cross-examination on the juvenile's record was whether he had testified to protect his probationary status or to shift suspicion away from himself. The opinion repeatedly referred to bias and prejudice. In that respect, we read the *Davis* court as limiting its holding. *"In this setting* we conclude that the right of confrontation is paramount to the State's policy of protecting a juvenile offender." (Emphasis added.) 415 U.S. at 319, 94 S.Ct. at 1112, 39 L.Ed.2d at 355.

■ In this case, both juvenile adjudications involved consumption of alcohol, a status offense rather than a crime. Neither juvenile's testimony could be considered crucial to State's case. We therefore find no conflict between Donald's right of confrontation and the trial court's ruling under SDCL 19–14–15 so far as *Davis* is concerned. We affirm the trial court on this issue.

DID THE TRIAL COURT ERR IN UNFAIRLY RESTRICTING THE KIND, SCOPE AND EXTENT OF DEFENSE COUNSEL'S CROSS–EXAMINATION OF WITNESSES?

On this issue, Donald again presents the court with a laundry list of supposed errors involving eight separate rulings. The list informs the court of the evidence sought through cross-examination, but fails to inform us of the basis for admissibility of such evidence.

The scope and extent of cross-examination is a matter within the sound discretion of the trial court. This court will not overturn the trial court's decision unless there is shown an abuse of discretion. *State v. Reutter*, 374 N.W.2d 617 (S.D.1985).

The record reveals that the trial court's rulings limiting the cross-examination were variously based on grounds of lack of rele-

**2.** SDCL 19–14–15 provides:
Evidence of juvenile adjudications is generally not admissible under § 19–14–12. The court may, however, in a criminal case allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence.

vancy, speculation, lack of foundation, more prejudicial than probative, and attempts to impeach prior inconsistent statements where no prior inconsistent statements had been made. We find no abuse of discretion in any of the trial court's rulings.

## DID THE TRIAL COURT ERR IN DENYING DEFENSE COUNSEL'S MOTION TO WITHDRAW, OR IN THE ALTERNATIVE FOR MISTRIAL, TO IMPEACH THE TESTIMONY OF PROSECUTION'S WITNESSES?

In the first instance, Donald's counsel sought to withdraw in order to testify for the purpose of impeaching prosecution witness Vermillion who had testified that he had seen Donald and the victim on two occasions just hours prior to the discovery of the victim's body. Defense counsel had interviewed Vermillion prior to trial and taped the conversation, in which it is claimed that Vermillion said that he had not seen Donald and the victim together. Defense counsel was precluded from impeaching Vermillion with the transcript of that interview, as it was an unsworn statement. The trial court denied the motion to withdraw.

The second instance arose when defense counsel again sought to withdraw to permit his law partner to testify to statements made by prosecution witness Bill McClain (McClain) in a pretrial interview wherein he allegedly made statements that someone other than Donald committed the offense. The trial court again denied the motion to withdraw.

In *State v. Iron Necklace*, 430 N.W.2d 66 (S.D.1988), we have recently addressed this issue. In that case, both defense counsel, each representing a defendant in a joint trial, sought to withdraw in order to testify for impeachment purposes. We acknowledged the constitutional conflict between the right to defend by counsel and the right to obtain witnesses and particularly the right to impeach a state's key witness by showing bias on their part, *citing State v. Weigers*, 373 N.W.2d 1 (S.D.1985). The real problem centers around the appointment of substitute counsel to proceed with

the trial and the obvious disruption to give such counsel time to prepare adequately. We adopted the Michigan Rule found in *People v. Johnson,* 144 Mich.App. 125, 133–35, 373 N.W.2d 263, 268 (1985), wherein it was held:

> Appointment of substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. (citation omitted) A trial court's decision on a request for substitution or a continuance will not be reversed on appeal absent a showing of an abuse of discretion.

*Iron Necklace,* 430 N.W.2d at 79.

In *Iron Necklace,* the trial court determined that inconsistency in the witness' testimony that defense counsel sought to impeach was so minimal that it did not warrant disrupting the trial by the appointment of substitute counsel. In this case, it appears that the trial court permitted defense counsel to cross-examine as to the statements made by Vermillion to defense counsel. Through this cross-examination, credibility of the witness was raised to the jury. Furthermore, defense counsel called its private investigator, John Culberson (Culberson), who had interviewed Vermillion on three occasions. Culberson testified that Vermillion had twice denied seeing Donald with the victim.

■ At a hearing on the motion, defense counsel admitted that Culberson could impeach Vermillion, but sought to "unequivocally refute" Vermillion's testimony. The trial court very properly ruled that defense counsel's testimony would be cumulative and denied the motion. It appears to us that Donald sought and received the services of an appointed investigator. The very reason for such appointment is to prove the type of testimony that is at issue here. Counsel appears to claim that his testimony would be of a higher plane so as to "unequivocally refute" Vermillion's testimony. We cannot perceive any reason why that should be so, except that he would be testifying as a lawyer and counsel for the par-

ty. That is the very reason SDCL 19–1–3[3] was enacted. We find no problem with strictly enforcing that statute in cases where the trial court has appointed an investigator. In fact, in cases of this nature, it is the best reason for the appointment of an investigator.

■ With respect to the second instance, the refusal to permit withdrawal in order to permit the law partner to testify, we find no reversible error. The proposed testimony, as suggested in Donald's brief, does not appear to be impeachment testimony. The partner was to testify to some statement that McClain made to him about someone else having committed the crime. Defense counsel has failed to make an adequate record on this issue. He made no offer of proof as to the witness' proposed testimony. We do not know when the purported interview took place. Perhaps there was ample time before trial to have made a pretrial motion so as to not disrupt the trial. The testimony may not have been admissible for any of a number of reasons. Based on the record that we have before us, we cannot say that the trial court clearly abused its discretion in denying the motion. *Iron Necklace, supra.* Therefore, we affirm the trial court on both rulings.

### DID THE TRIAL COURT ERR IN ALLOWING DEFENSE EXPERT NELSON JENNETT TO BE CALLED AS A PROSECUTION WITNESS WHEN HE WAS NOT SUBPOENAED AND AFTER HE HAD LEFT THE STATE?

Pursuant to defense motion, an expert on hair and fiber analysis, Nelson Jennett (Jennett), was appointed to assist the defense. Jennett came from his home in Colorado purportedly to testify for the defense. On the day that he was to testify, defense counsel determined not to call him as a witness and sent him on his way home at 7:00 a.m. At 8:20 a.m., defense counsel informed the trial court and State of this decision. The state's attorney promptly asked leave to have Jennett returned to Mobridge to testify as a rebuttal witness for State. Based on Jennett's reports, State intended to examine the witness concerning his analyses of Donald's fingernail scrapings, in which a head hair of the victim was found. They also intended to adduce that a pubic hair belonging to the victim was found on Donald's tennis shoes. State contended that all of this would be proper rebuttal testimony to counter Donald's testimony that he had not seen the victim on the night in question. The trial court required defense counsel to assist in intercepting Jennett on his homeward journey. He was called back and allowed to testify as a prosecution rebuttal witness.

Donald claims two points of error in this issue. First, that it was an abuse of discretion for the trial court to require Jennett to appear or forfeit his travel expenses and, second, that State was permitted to call Jennett without having served him with a subpoena or having properly endorsed his name on the information as a witness for the prosecution.

■ We examine the subpoena issue first. Donald claims that if State wanted to call Jennett as their witness they should have complied with the statutory provisions for interstate summons of witnesses, SDCL 23A–14–14 to 23A–14–24.[4] Donald cites us to no authority for the proposition that a party has standing to object to a witness testifying without having been subpoenaed. To that extent, we consider that issue to be waived.

■ As for State having failed to properly endorse Jennett's name as a witness, we find that under the circumstances of this case the defense was not prejudiced. They knew of his existence and had his reports. State claims that defense counsel had assured both the prosecution and the trial court that he would be called as a

---

3. SDCL 19–1–3 provides, in pertinent part: "When an attorney is a witness for his client upon any trial except as to merely formal matters such as the attestation or custody of an instrument or the like, he shall not further participate in such trial."

4. In hindsight, in view of the rather important clinical findings that Jennett had disclosed in his report, which the State did not have otherwise available, it probably would have been wise for the state's attorney to have subpoenaed Jennett.

defense witness. The defense caused him to travel to Mobridge, obviously at county expense, for the purpose of testifying. When the defense reneged in the early morning hours on the day he was to appear, we think that the trial court was justified in permitting State to call him without the endorsement.

■ Donald also urges that the trial court was in error by requiring Jennett to return and testify at the peril of not receiving the travel expenses he had incurred in making the trip. Since Jennett's services had been authorized by the trial court and his expenses incurred in traveling to Mobridge would have to be approved by the trial court, we do not find it unreasonable, nor an abuse of discretion, for the trial court to refuse to pay travel expenses for a witness who does not testify. We affirm on this issue.

WAS IT ERROR FOR THE TRIAL COURT TO RECEIVE INTO EVIDENCE CHARTS PREPARED BY THE PROSECUTION WHICH HAD NOT BEEN TURNED OVER TO THE DEFENSE UNDER ITS DISCOVERY MOTION AND WHICH WERE PREJUDICIAL TO THE DEFENSE?

■ Donald complains as to the admittance into evidence of demonstrative evidence based on State's supposed violation of discovery orders. State's expert prepared a report based on serological testing. This report was disclosed to defense counsel in compliance with discovery orders. The expert also prepared two charts which contained information identical to the report, as an aid to assist the jury in understanding his testimony. State offered the charts into evidence and defense counsel, at an in-camera hearing to determine admissibility, objected on the grounds of the prejudicial effect of the exhibits on Donald. At that hearing, a complete and thorough foundation was laid for the admissibility of the charts. Defense counsel was in possession of the substantive evidence, the crime lab report, and admitted that the charts contained no additional information.

Under SDCL 19–17–1 (Rule 901), adopted from the Federal Rules of Evidence, admissibility of evidence is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. South Dakota has long recognized the admissibility of demonstrative evidence for the purpose of illustration. *State v. Hartman,* 256 N.W.2d 131 (S.D.1977); *Northwestern Nat. Bank of Sioux Falls v. Brandon,* 88 S.D. 453, 221 N.W.2d 12 (1974). We affirm the trial court's ruling.

DID THE TRIAL COURT ERR IN DENYING DEFENSE MOTION FOR A MISTRIAL, OR IN THE ALTERNATIVE THAT THE TESTIMONY OF ILYA ZELDES AND REX RIIS BE EXCLUDED BECAUSE OF A VIOLATION OF THE COURT'S SEQUESTRATION ORDER?

■ Prior to trial, the trial court granted defense counsel's motion for sequestration of witnesses. Donald now argues that the sequestration order was violated by two state witnesses, Zeldes and Riis. An intern from their office had been allowed to sit in on the testimony because she would not be a witness. During a break, defense counsel overheard the intern relating to Zeldes and Riis questions defense counsel had asked on cross-examination of other witnesses. Defense counsel moved in the alternative for mistrial or for exclusion of Zeldes' and Riis' testimony. The trial court conducted an in-camera hearing, examining the intern and determined that she had only related questions asked by defense counsel as had been reported in the newspaper the night before. She did not relate any testimony. The trial court denied the motion upon the grounds that there was no indication of prejudicial effect on Donald as a result of the conversation. We agree.

■ SDCL 19–14–29 (Rule 615) requires the sequestration of witnesses upon a request by a party or upon the court's own motion. The statute makes certain exceptions, none of which are pertinent to this argument. Whether a mistrial, or exclusion of testimony, should be granted where the court's sequestration order is violated is left to the sound discretion of the trial court. *State v. Dixon,* 419 N.W.2d 699 (S.D.1988); *State v. Walker,* 19 Wash.App.

881, 578 P.2d 83 (1978); *State v. Bembenek*, 111 Wis.2d 617, 331 N.W.2d 616 (1983). There is no evidence in this record that Donald's rights were in any way prejudiced, particularly in light of the fact that the questions posed by defense counsel had been published by the local media the previous evening. We affirm the ruling of the trial court.

DID THE TRIAL COURT ERR IN DENYING DONALD'S VARIOUS MOTIONS FOR JUDGMENT OF ACQUITTAL BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO CONVICT HIM OF THE CRIMES CHARGED?

Donald moved for judgment of acquittal at the close of State's case and at the close of the defense case. The thrust of his argument is that, the case having been based entirely upon circumstantial evidence, the proved circumstances are not consistent with his guilt and can be reconciled with other rational conclusions.

First, Donald reminds us that in *State v. Ashker*, 412 N.W.2d 97, 105 (S.D.1987), we said:

When ruling on a motion for judgment of acquittal, the trial court must consider the evidence in the light most favorable to the nonmoving party who is also given the benefit of all reasonable inferences in their favor. ... A motion for judgment of acquittal is properly denied if the state has introduced evidence which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt for the crime charged. (Citations omitted.)

In *Ashker*, we also quoted from *State v. Esslinger*, 357 N.W.2d 525, 530–31 (S.D. 1984), as follows:

The established rule in this state is that to warrant conviction upon circumstantial evidence alone, such facts and circumstances must be shown as are consistent with each other and with guilt of the party charged, and such as cannot by any reasonable theory be true and the party charged be innocent.

*Ashker*, 412 N.W.2d at 105.

Donald argues that the proved circumstances are not consistent with his guilt

and can be reconciled with other rational conclusions. For this proposition he relies on the testimony of a defense expert and alleged inconsistencies in the testimony of State's witnesses as adduced under cross-examination. Donald relies on conflicts in the evidence. However, we have held that, in addition to viewing the evidence in favor of State, the trial judge in such circumstances does not resolve conflicts in the evidence.

In *State v. Luna*, 264 N.W.2d 485, 488 (S.D.1978), in discussing refusal of a motion for new trial based on insufficient evidence, including circumstantial evidence, we adopted the reasoning of the North Dakota Supreme Court in *State v. Allen*, 237 N.W.2d 154, 161 (N.D.1975), wherein it was stated:

* * * rule as to circumstantial evidence, at the trial level, is that such evidence must be conclusive and must exclude every reasonable hypothesis of innocence, but at the appellate level we do not substitute our judgment for that of the jury or trial court where the evidence is conflicting, if one of the conflicting inferences reasonably tends to prove guilt and fairly warrants a conviction.

Consistent with that rule, we further noted that "the jury was properly instructed as to the consideration and inferences to be drawn from circumstantial evidence[,]" and that "[t]he jury, as the trier of fact, makes the decision regarding the consistency of the theories. The scope of review of this court has traditionally been to accept 'that evidence, and the most favorable inferences that can be drawn therefrom, which will support the verdict.'" *Luna*, 264 N.W.2d at 487–88.

In *State v. Dietz*, 264 N.W.2d 509, 510–11 (S.D.1978), we summarized our holding in *Luna*, as follows:

Although the rule at the trial level requires that the jury find the circumstantial evidence be conclusively inconsistent with any reasonable hypothesis of innocence, (cite omitted) the rule at the appellate level is that a guilty verdict will not be set aside if the evidence, including the circumstantial evidence and reasonable

inferences, sustains a rational theory of guilt.

■ In *Ashker, supra,* we reiterated our holding in *Luna, supra.* Just as in *Ashker,* we find that "the jury was instructed on circumstantial evidence and they returned a guilty verdict against [Donald]. We may not, as a matter of law, set aside this verdict for insufficiency of the evidence, if the evidence sustains some rational theory of guilt." 412 N.W.2d at 106. Further, we find ample evidence to support the convictions.

Lastly, we examine Donald's allegations of error in the trial court's instructions.

### DID THE TRIAL COURT'S APPLICATION OF SDCL 22–5–10 DEPRIVE THE DEFENDANT OF HIS DUE PROCESS RIGHTS AND A FAIR TRIAL BY IMPERMISSIBLY SHIFTING THE BURDEN OF PROVING THE DEFENSE OF INSANITY?

On the question of Donald's plea of insanity, the trial court instructed the jury regarding the shifting of the burden of proof of the affirmative defense of insanity to the defendant by clear and convincing evidence, as provided in SDCL 22–5–10.[5] Donald acknowledges that the United States Supreme Court, speaking in *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), and more recently in *Martin v. Ohio,* 480 U.S. 228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987), has concluded that it is permissible to shift the burden of proof of insanity to the defendant because it is not an element of the offense charged. But, relying on our decision in *State v. Jones,* 406 N.W.2d 366 (S.D.1987), Donald urges us to declare SDCL 22–5–10 to be unconstitutional under Article VI, § 2 of our State Constitution.

In *Jones,* we held that SDCL 23A–10A–6.1, which then provided that "[t]he party asserting that a defendant is *mentally incompetent to proceed* [to stand trial] has the burden of proving it by a preponder-

ance of evidence[,]" 406 N.W.2d at 367 (emphasis added), was unconstitutional under the aforementioned provision of our State Constitution.[6] Donald's reliance on *Jones* is totally misplaced. At issue there was the ability of a defendant to stand trial. Our decision clearly stated: "Incompetency to stand trial and incapacity to commit a crime because of insanity are, of course, distinct and separate issues." 406 N.W.2d at 369. We first noted that the United States Supreme Court had not, as yet, extended the *Leland* rationale to competency hearings, although several federal courts had eschewed the application of *Leland* to such hearings. We then determined that rather than wait for a federal decision at some future time that we would review the provision in the light of our own constitution.

We started with the premise that "[i]t is the settled criminal law in this state that 'the burden of proof rests upon the prosecution at every stage of the trial.'" 406 N.W.2d at 369 (citations omitted). Since the competency of the accused to stand trial controls whether there is even going to be a trial, it necessarily follows that a competency hearing is a "basic stage of the proceeding." From that premise, we concluded that the burden of proof allocation imposed by the statute when the accused's attorney moves for an incompetency hearing is incompatible with this settled South Dakota rule. We referred to the reasoning in *State v. Hollis,* 569 F.2d 199 (3d Cir. 1977), for the proposition that "[w]hen the competency of the accused is put in question he may or may not have the mentality to fairly defend himself. If in fact the defendant is less than competent, however, a handicap exists which renders a fair trial impossible." 406 N.W.2d at 370. We finally decided that, because competency to stand trial is not an element of any offense, the burden on State of proving competency is only the preponderance standard. *Id.*

5. SDCL 22–5–10 provides;
   Insanity is an affirmative defense to a prosecution for any criminal offense. Mental disease or defect does not otherwise constitute a defense. The defendant has the burden of proving the defense of insanity by clear and convincing evidence.

6. The statute has since been amended to conform to our decision.

While Donald may have found some language in *Jones* that indicated a parallel between incompetency to stand trial and insanity, we suggest that such language was illustrative only and cannot be mistaken as substantive with regard to the affirmative defense of insanity. In view of the United States Supreme Court pronouncements upholding the shifting of the affirmative defense of insanity to the defendant, coupled with the fact that a large number of state supreme courts have also so held under their respective state constitutions, we decline to find SDCL 22–5–10 to be unconstitutional under the provisions of Article VI, § 2 of our State Constitution. We affirm the trial court on this issue.

DID THE TRIAL COURT ERR AND DEPRIVE THE DEFENDANT OF A FAIR TRIAL BY INSTRUCTING THE JURY PURSUANT TO SDCL 22–3–1.1 THAT VOLUNTARY CONSUMPTION OF ALCOHOL DOES NOT CAUSE INSANITY?

In this issue, Donald alleges that three instructions regarding intoxication were erroneously given. His brief cites us to the early case of *State v. Kapelino*, 20 S.D. 591, 108 N.W. 335 (1906), which we find instructs us that it is proper for the court to instruct in the language of the statute. We find no authority for any constitutional discussion. From the record it appears that defense counsel failed to preserve this issue for appeal by proper objections to the instructions as proposed by the trial court. We therefore deem this issue to be waived.

BALANCE OF INSTRUCTION ISSUES

Finally, we examine Donald's complaints that the trial court failed to give some of his proposed instructions. At trial he proposed some sixty-six instructions in all and now complains only of the trial court's objection of thirty-seven of them. First, Donald claims that some seventeen instructions, which he summarizes as proposed instructions on degrees of offenses which should have been given with respect to the charges of murder, robbery and assault, should have been given by the trial court. Donald acknowledges that two

tests must be met, the legal test and the factual test, before the trial court can submit an instruction on a lesser included offense to the jury. *State v. Heumiller*, 317 N.W.2d 126 (S.D.1982). He then fails to point out where either, let alone both tests, were met in this case. We therefore deem that issue waived.

Donald next complains that the trial court erred in refusing four instructions which he says adequately set out the law on SDCL 22–30–4, taking without knowledge of victim not robbery. The record reflects that the trial court instructed the jury in the words of the statute verbatim. We consider this issue to be without merit.

In regard to the next series of proposed instructions, Donald complains that the trial court failed to instruct on the interrelationship between the initial felony and the murder charges. This argument is apparently premised on his argument at the settling of the instructions when he stated: "We feel that the state has to show that the underlying felony was completed while engaged in the perpetration or that the homicide occurred while engaged in the commission or perpetration of the felony; and that if there is not a sufficient continuity or nexus, then the defendant would be not guilty of the felony murder statutes (sic)." The theory seems to turn on some completion, termination or abandonment of the initial robbery or rape before the homicide, or the occurrence of the robbery after the death of the victim. However, Donald fails to even suggest any factual support for the requested instructions. The trial court is not required to instruct as to matters that find no support in the evidence. *State v. Chamley*, 310 N.W.2d 153 (S.D. 1981). Therefore, we find this issue to be without merit.

With respect to the final three proposed instructions, Donald claims they more accurately point out the necessity for causal connection between the unlawful act and the death. Jury instructions, when considered as a whole, are adequate when they correctly state the law and inform the jury. *State v. Traversie*, 387 N.W.2d 2 (S.D.1986). We have examined the pro-

posed instructions and are satisfied that the trial court adequately informed the jury that acts perpetrated by Donald had to be the proximate cause of the victim's death and that, to be guilty of the felony-murder charges, Donald had to have caused the death "while engaged in the perpetration of the crime." We affirm the trial court on all the issues regarding refusing Donald's proposed instructions.

In summation, we affirm the convictions.

WUEST, C.J., and MILLER, J., concur.

HENDERSON, J., specially concurs.

SABERS, J., dissents.

HENDERSON, Justice (specially concurring).

I concur with the majority on all of the issues, and write specially to address the first argument raised by the dissent. SDCL 22–5–10 is constitutional.

The rule which prevailed in this state prior to 1985, provided that a rebuttable presumption of a defendant's sanity existed. If that presumption was overcome, the burden was placed on the state to prove the defendant's sanity beyond a reasonable doubt. This rule was statutory, not constitutional, in origin.

In *State v. Waugh*, 80 S.D. 503, 509, 127 N.W.2d 429, 432 (1964), this Court wrote:

SDC 13.0201, *which is the basis of our rule*, classifies lunatics, insane persons, and all persons of unsound mind, including persons temporarily or partially deprived of reason, upon proof that at the time of committing the act charged against them they were incapable of knowing its wrongfulness, as persons not capable of committing crimes. On the other hand, SDC Ch. 13.05 enumerates defensive matters that excuse or exonerate from punishment. Insanity is not included in the list. (Emphasis added.)

The above passage reveals that this Court premised its decision, in *Waugh,* on two statutory bases which the legislature removed in 1985 S.D. Sess.L. ch. 192 (H.B. 1369). Section 10 of the new law deleted SDCL 22–3–1(3), formerly part of SDC 13.-0201, which classified "insane" persons among those incapable of committing crimes.\* Section 11 of the new law added a new section (now SDCL 22–5–10), to SDCL ch. 22–5, which provides that insanity is an affirmative defense to be proven by the defendant by clear and convincing evidence. As both statutory props for the old rule have been removed by legislative action, the rationale for the old rule explained in *Waugh* is no longer valid.

As our former rule was statutory, not constitutional, our prior case law provides no constitutional authority invalidating SDCL 22–5–10. The dissent's argument that the new statutory scheme is unconstitutional is unsound; weighty authority favors SDCL 22–5–10. *See Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952). The same constitutional argument used by the dissent, has been rejected by federal circuit courts considering the constitutional validity of the Insanity Defense Reform Act of 1984 (see 18 U.S.C. § 17), which is similar to SDCL 22–5–10. *See United States v. Freeman,* 804 F.2d 1574 (11th Cir.1986); *United States v. Amos,* 803 F.2d 419 (8th Cir.1986). The United States Supreme Court expressly refused to reconsider *Leland* in *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).

Regarding the "clear and convincing" evidence required of the defendant under SDCL 22–5–10, I follow the United States Supreme Court's lead in *Leland,* by which it is constitutional to require a defendant to prove his insanity beyond a reasonable doubt. "It is axiomatic, therefore, that a lesser standard of proof, such as the clear and convincing standard, may be imposed."

---

\* SDC 13.0201(4) contained the "lunatics, insane persons, and all persons of unsound mind ..." provision referred to in *Waugh.* 1976 S.D.Sess. L. ch. 158, § 3–1, amended SDCL 22–3–1(4), formerly SDC 13.0201(4), to provide that "men-

tally ill" persons were incapable of committing crimes. 1983 S.D.Sess.L. ch. 174, § 3 (S.B. 90) substituted "insane" for "mentally ill" and renumbered the subsection 22–3–1(3). SDCL 22–3–1(3) was deleted in 1985.

*Amos,* 803 F.2d at 421. The trial court's instruction defining "clear and convincing" evidence was consistent with the language of this Court in *In re S.H.,* 337 N.W.2d 179 (S.D.1983), and *In re J.W.W.,* 334 N.W.2d 513 (S.D.1983). No reversal was warranted on this issue.

SABERS, Justice (dissenting).

### 1. *Unconstitutional Shifting of Burden of Proof.*

I would reverse and remand for a new trial because the trial court's instructions improperly required Rough Surface to prove his insanity by clear and convincing evidence under SDCL 22–5–10. This is plain error as the statute is unconstitutional. SDCL 23A–44–15 provides "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of a court." *State v. Breed,* 399 N.W.2d 311 (S.D.1987); *State v. Brammer,* 304 N.W.2d 111 (S.D.1981).

The fatal constitutional defect of SDCL 22–5–10 is that it places upon the defendant "the burden of proving the defense of insanity by clear and convincing evidence." The State cannot constitutionally require a defendant to do more than raise a reasonable doubt as to his sanity, i.e., the defendant's burden of persuasion cannot exceed raising "a reasonable doubt." It is an unconstitutional invasion of the presumption of innocence to exceed this point. S.D. Const., art. VI, § 2.

The State must prove each and every element of the crime charged beyond a reasonable doubt. Most serious crimes contain an element which overlaps sanity. Therefore, if the defendant raises a reasonable doubt as to his sanity, it becomes constitutionally inconsistent and impossible for the State to prove the overlapping element of the crime *beyond* a reasonable doubt.

Therefore, the statute poses a very great danger for jury confusion and for conviction by less than beyond a reasonable doubt and is unconstitutional. S.D. Const., art. VI, § 2.

### 2. *Three Murder Convictions on One Death.*

This case presents an additional plain error or defect which affects substantial rights. Rough Surface was tried and convicted on all six counts of the information. They were 1) first-degree robbery; 2) first-degree rape; 3) first-degree assault; 4) first-degree murder by premeditated design; 5) first-degree murder in the commission of a felony—rape; and 6) first-degree murder—robbery. He was sentenced to concurrent terms of life imprisonment in the South Dakota State Penitentiary on each murder conviction. He was also given concurrent fifteen-year sentences on each of the other counts. It was plain error to convict and sentence him on all three murder charges as the two felony murder convictions are not proper.

Felony murder is an alternative to premeditated murder in cases where the elements of murder are difficult to prove. Felony murder was never intended to be used, as here, as a supplement to the basic charge of murder to enable the State to get two or more murder convictions where only one death resulted. *State v. Wise,* 237 Kan. 117, 697 P.2d 1295 (1985); *People v. Lowe,* 660 P.2d 1261 (Colo.1983). As stated by Justice Wollman in his excellent writing in *State v. O'Blasney,* 297 N.W.2d 797, 798 (S.D.1980) (*citing* 13 Gonz.L.Rev. 268, 271 (1977)):

> [One] rationale underlying the felony murder rule is the transferred or constructive intent theory. According to this approach, "the purpose of the felony-murder rule is to relieve the state of the burden of proving premeditation or malice.... By proof of the perpetration of a separate felony, general malicious intent is transferred from that crime to the homicide, thus elevating the homicide to the crime of murder."

Numerous courts have vacated a conviction and sentence for both premeditated murder and felony murder where there has only been one death. *State v. LaTourelle,* 343 N.W.2d 277 (Minn.1984); *Lowe, supra; Thompkins v. State,* 270 Ind. 163, 383 N.E. 2d 347 (1978); *State v. Jackson,* 223 Kan.

554, 575 P.2d 536 (1978); *State v. Gilroy,* 199 N.W.2d 63 (Iowa 1972); *Gray v. State,* 463 P.2d 897 (Alaska 1970); *Goss v. State,* 398 So.2d 998 (Fla.Dist.Ct.App.1981); *People v. Densmore,* 87 Mich.App. 434, 274 N.W.2d 811 (1978). The rationale applied by these courts is that the imposition of two sentences violates double jeopardy as it permits double punishment for one offense. *Thompkins, supra; Jackson, supra; Gilroy, supra.* This court has also recognized that double jeopardy protects against multiple punishments for the same offense. *State v. Baker,* 440 N.W.2d 284 (S.D.1989); *State v. Adams,* 418 N.W.2d 618 (S.D.1988).

In *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court first set out the "same evidence" test to determine whether two statutes prohibit the same offense for purposes of double jeopardy. The test set out in *Blockburger* is "whether each provision requires proof of a fact which the other does not." *Id.* 284 U.S. at 304, 52 S.Ct. at 182. The Supreme Court has since clarified *Blockburger* and stated that it is merely a tool for statutory construction and may not be used to contravene the intent of the legislature. *Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985); *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). As stated in *Hunter* the "Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Id.* 459 U.S. at 366, 103 S.Ct. at 678. "The assumption underlying the *Blockburger* rule is that [the legislature] ordinarily does not intend to punish the same offense under two different statutes." *Ball v. United States,* 470 U.S. 856, 861, 105 S.Ct. 1668, 1671, 84 L.Ed.2d 740, 746 (1985).

Other jurisdictions which have faced this question have stated that the intent of the legislature must be considered foremost. *Houser v. State,* 474 So.2d 1193 (Fla.1985); *Lowe, supra; Gray, supra.* These courts have recognized that under modern statutory schemes the "same evidence" test may not be sufficient:

Legislative refinement of an essentially unitary criminal episode into numerous separate violations of the law has resulted in a proliferation of offenses capable of commission by a person at one time and in one criminal transaction. Since each violation by definition will usually require proof of a fact which the others do not, application of the same-evidence test will mean that each offense is punishable separately. But as the separate violations multiply by legislative action, the likelihood increases that a defendant will actually be punished several times for what is really and basically one criminal act. (footnote omitted).

*Whitton v. State,* 479 P.2d 302, 306 (Alaska 1970). The court should not assume that the legislature intended that a defendant could be convicted of more than one type of first-degree murder where there is but one death, unless there is a clear intention on the part of the legislature. *Houser, supra; Lowe, supra.* This is consistent with the rule of lenity adopted by the United States Supreme Court. *Busic v. United States,* 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980); *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). This rule requires the courts to resolve statutory ambiguities in favor of the defendant. *Whalen, supra; Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955).

SDCL 22–16–4 provides that first-degree murder may be committed either 1) by premeditation, or 2) by the perpetration or attempt to perpetrate certain enumerated felonies. The evidence may establish, as here, that a single homicide is both premeditated and in perpetration of one of the enumerated felonies. Courts have held that this alone does not establish a legislative intent to convict a person of both offenses for only one death. *Houser, supra; Lowe, supra.* There is nothing in SDCL 22–16–4 which would evidence an intent on the part of the legislature to permit a conviction and sentence on more than one first-degree murder when there is only one death. As stated by the Colorado Supreme Court in *Lowe:*

The legislature has not manifested any clear intent that a defendant could be convicted of more than one kind of first-degree murder where there is but one victim. The rule of lenity requires that the first-degree murder statute be construed to favor the defendant. That construction is that a defendant can be convicted only of one first-degree murder for one killing.

*Id.* at 1269.

A fair reading of the above cases makes it obvious that the separate acts of the defendant support the conviction for 1) first-degree robbery, 2) first-degree rape, 3) first-degree assault, and 4) first-degree murder by premeditated design, but cannot support additional convictions for 5) first-degree murder in the commission of a felony—rape, and 6) first-degree murder in the commission of a felony—robbery.* To permit all three of the murder convictions to stand against Rough Surface is error. As stated in *Gray, supra* at 911–12:

> Although there are several ways of committing first degree murder, it is still only one crime; and only one sentence can be imposed....

> It would indeed be a strange system of justice that would allow [a defendant] to be sentenced to two life sentences for the killing of one person.

This is plain error under SDCL 23A–44–15. *Breed, supra; Brammer, supra.* I would reverse and remand to the trial court for vacating the convictions for first-degree murder in the commission of a felony—rape, and first-degree murder in the commission of a felony—robbery, and for appropriate resentencing.

---

* The Kansas court has held that it is improper for the trial court to instruct a jury that they may convict a defendant of both premeditated murder and felony murder where there is one death and the theories should be given in the alternative to avoid jury confusion. *Wise, supra; Jackson, supra.* However, the failure to instruct in the alternative does not rise to the level of prejudicial error, unless a defendant is sentenced on both convictions. *Wise, supra.*